# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

In re:                                 )
                                       )
EDRIE A. PFEIFFER, ESQUIRE.            )        Miscellaneous Proceeding
                                       )
                                       )

## ORDER TO SHOW CAUSE AGAINST
## EDRIE A. PFEIFFER, ESQUIRE

On September 8, 2016, this Court held hearings on the Motion to Approve Settlement of

Complaint ("Motion to Approve"), filed on August 10, 2016, by Navy Federal Credit Union

("NFCU"), by counsel, and the Motion to Examine Debtor's Transactions with His Attorney and

for Disgorgement of Paid Fees Pursuant to 11 U.S.C. § 329 ("Motion to Examine"), filed on July

22, 2016, by the United States Trustee. Both motions were filed in the bankruptcy case of Brett Bud

Hall ("Mr. Hall"), Bankruptcy Case No. 16-70486-SCS. The Motion to Approve sought approval

of a settlement regarding a complaint filed against Mr. Hall by NFCU on May 12, 2016, which

initiated Adversary Proceeding No. 16-07024-SCS ("Complaint"). The Complaint and exhibits

thereto are attached to this Order as Attachment A. The Motion to Examine and exhibits thereto are

attached to this Order as Attachment B.[1]

Both the Complaint and the Motion to Examine were based on the same undisputed facts and

are summarized as follows. In December 2015, before the filing of his bankruptcy petition, Mr. Hall

met with Edrie A. Pfeiffer, Esquire ("Ms. Pfeiffer"), to discuss filing for bankruptcy protection. Ms.

Pfeiffer advised Mr. Hall to contact Sperro, LLC ("Sperro"), a company that would take possession

of Mr. Hall's vehicle, a 2015 Toyota Tacoma (the "Vehicle"). In exchange, Sperro would pay Ms.

---

[1] Exhibit B to the Motion to Examine was filed on the same date as a separate docket
entry (Entry 33); it is incorporated sequentially into the exhibits to the Motion to Examine.

Pfeiffer's attorney fees for representing Mr. Hall in his bankruptcy case.[2]  The agreement required Mr. Hall to pay certain towing and storage fees; if those fees were left unpaid, Sperro would place a mechanic's lien on the Vehicle and, ultimately, sell it to satisfy the lien.  The Vehicle, however, was already encumbered by a purchase money lien held by NFCU, on which Mr. Hall owed over $50,000.00 at the time his bankruptcy case was filed, which amount far exceeded the value of the Vehicle.

Following Ms. Pfeiffer's advice, Mr. Hall entered into the agreement with Sperro, which took possession of and transported the Vehicle from Virginia to Indiana in December 2015.  Sperro then paid Ms. Pfeiffer $1,835.00 (which included Mr. Hall's $335.00 bankruptcy filing fee).  Disclosures on Mr. Hall's Statement of Financial Affairs and Disclosure of Compensation of Attorney for the Debtor, both filed with Mr. Hall's bankruptcy petition on February 17, 2016, confirm the transfer of the Vehicle to Sperro and the payment of $1,835.00 to Ms. Pfeiffer by Sperro.  Despite these representations, Mr. Hall's bankruptcy schedules and his Statement of Intention incorrectly stated that the Vehicle was still located in Virginia Beach, Virginia.[3]

NFCU was unaware of Mr. Hall's agreement with and transfer of the Vehicle to Sperro until being so informed by the Chapter 7 Trustee after she conducted the Section 341 Meeting of Creditors in March 2016.  NFCU filed a Complaint on May 12, 2016, seeking the denial of Mr. Hall's discharge (on the basis that he sought to hinder, delay, and defraud the credit union by

---

[2]  Ms. Pfeiffer candidly admitted at the September 8, 2016 hearings that Mr. Hall became aware of and engaged in the transaction with Sperro as a result of her advice and counsel. Transcript of September 8, 2016 hearings, at 9.

[3]  Ms. Pfeiffer indicated at the September 8, 2016 hearings that "there was [an] error on his paperwork that indicated he had possession of the [V]ehicle."  Transcript of September 8, 2016 hearings, at 7.

intentionally transferring possession of the Vehicle without its consent) and a determination that the debt Mr. Hall owed to it was nondischargeable (as a result of his willful and malicious injury to the credit union by permitting Sperro to attach a fraudulent mechanic's lien to the Vehicle). Mr. Hall, by Ms. Pfeiffer, filed an answer to the Complaint on June 14, 2016, in which he asserted, as an affirmative defense, that he engaged in the transaction with Sperro based upon his reliance on Ms. Pfeiffer's advice to do so. Answer to Complaint, filed June 14, 2016, at 10. The Answer to the Complaint is attached to this Order as Attachment C.

The United States Trustee's Motion to Examine requested that the Court examine Mr. Hall's transactions with Ms. Pfeiffer and determine whether the compensation Ms. Pfeiffer received exceeded the reasonable value of the services she provided to Mr. Hall. The United States Trustee also requested that the Court order Ms. Pfeiffer to return the legal fees paid to her by Sperro to Mr. Hall or, in the alternative, the bankruptcy estate. Finally, the United States Trustee requested that the Court cancel any fee agreement between Mr. Hall or Sperro and Ms. Pfeiffer or her law firm.

After the Court established a trial date for the Complaint, counsel for NFCU located the Vehicle, which was in the possession of the Indiana State Police,[4] and secured its release upon the credit union's payment of $1,660.00 for storage fees. NFCU and Ms. Pfeiffer then reached a settlement, whereby Ms. Pfeiffer, "[t]aking responsibility for the actions of the Debtor," (*see* Consent Order in Settlement of Navy Federal Credit Union's Complaint Objecting to the Debtor's Discharge and Dischargeability of Debt, entered September 19, 2016, at ¶ 17) would pay NFCU

---

[4] According to paragraph 14 of the Consent Order in Settlement of Navy Federal Credit Union's Complaint Objecting to the Debtor's Discharge and Dischargeability of Debt, entered September 19, 2016, "The Vehicle was picked up on July 11, 2016 from the Indiana State Police, where it had [been] held after it had been seized from Sperro, LLC's lot on March 1, 2016 as part of a grand jury forfeiture subpoena against Sperro, LLC."

$4,000.00, representing attorney fees of $1,500.00 that Ms. Pfeiffer received from Sperro;

reimbursement of the storage expense; and payment for a portion of the attorney fees that NFCU

incurred. Upon payment of this sum, NFCU agreed to dismiss the Complaint against Mr. Hall. Ms.

Pfeiffer likewise agreed to entry of a consent order granting the Motion to Examine, based upon the

terms of the settlement reached with NFCU.

Ms. Pfeiffer; Anastasia Kezman, counsel for NFCU; and Kenneth N. Whitehurst, III,

Assistant United States Trustee, appeared at the hearings held on September 8, 2016. For the

reasons stated on the record from the bench, the Court granted both motions, as set forth in the

Consent Order in Settlement of Navy Federal Credit Union's Complaint Objecting to the Debtor's

Discharge and Dischargeability of Debt, entered September 19, 2016,[5] and the Consent Order

Granting the Motion to Examine Debtor's Transactions with His Attorney and for Disgorgement of

Paid Fees Pursuant to 11 U.S.C. § 329, entered September 8, 2016 (collectively, "the Orders"). The

Orders contain several factual admissions in support of the above facts. Accordingly, the Court

hereby incorporates by reference both Orders, copies of which are annexed to this Order as

Attachment D and Attachment E, respectively. The Court also incorporates by reference the

transcript of the September 8, 2016 hearings, annexed hereto as Attachment F.

In the order memorializing the settlement with NFCU, Ms. Pfeiffer agreed that Mr. Hall

undertook his actions and engaged in the transaction with Sperro based upon her advice. Consent

Order in Settlement of Navy Federal Credit Union's Complaint Objecting to the Debtor's Discharge

and Dischargeability of Debt, entered September 19, 2016, at ¶ 7. Ms. Pfeiffer further admitted that

---

[5] The identical order approving the settlement between NFCU and Ms. Pfeiffer was
entered in the Adversary Proceeding on September 16, 2016.

4

Sperro paid $1,835.00 to her law firm after Mr. Hall transferred possession of the Vehicle to Sperro
and that such "fees were obtained in exchange for Sperro, LLC['s] acquisition of NFCU's
collateral." *Id.* ¶¶ 8-9, 16. Neither Mr. Hall, Ms. Pfeiffer, nor Sperro notified NFCU that possession
of the Vehicle had been transferred to Sperro. *Id.* ¶¶ 10-11.

Ms. Pfeiffer made similar admissions in the Consent Order Granting the Motion to Examine
Debtor's Transactions with His Attorney and for Disgorgement of Paid Fees Pursuant to 11 U.S.C.
§ 329, including that she "advised the debtor to transfer the Vehicle to [Sperro], which would sell
the vehicle, and use the proceeds to pay the debtor's bankruptcy filing fees, and all fees due to
[Hampton Roads Legal Services] for Ms. Pfeiffer's representation of the debtor in this bankruptcy
case." Consent Order Granting the Motion to Examine Debtor's Transactions with His Attorney and
for Disgorgement of Paid Fees Pursuant to 11 U.S.C. § 329, entered September 8, 2016, at ¶ G. Ms.
Pfeiffer further agreed that Mr. Hall, "on the advice of Ms. Pfeiffer, entered into an agreement to
transfer the Vehicle to Sperro" and "[a]s a result of the debtor's transfer, [Hampton Roads Legal
Services] received $1,835 from Sperro." *Id.* ¶¶ H-I. Finally, Ms. Pfeiffer "represents that she has
not advised any debtors other than the debtor in this case to transfer their vehicle to Sperro, LLC in
exchange for the payment of her fees." *Id.* ¶ P.

Local Bankruptcy Rule 2090-1(I) incorporates by reference the ethical standards regarding
the practice of law as set forth in the Virginia Rules of Professional Conduct. Several of the rules
appear to be violated here as a result of Ms. Pfeiffer's conduct. First, Rule 1.1 requires a lawyer to
exhibit competence: "A lawyer shall provide competent representation to a client. Competent
representation requires the legal knowledge, skill, thoroughness and preparation reasonably
necessary for the representation." Va. R. Prof'l Conduct 1.1. The rules also prohibit a lawyer from

5

counseling or assisting a client in the engagement of criminal or fraudulent activity: "A lawyer shall

not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or

fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with

a client and may counsel or assist a client to make a good faith effort to determine the validity,

scope, meaning, or application of the law." *Id.* 1.2(c). Likewise, pursuant to Virginia Rule of

Professional Conduct 8.4(b), "[i]t is professional misconduct for a lawyer to . . . commit a criminal

or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or

fitness to practice law." *Id.* 8.4(b). Finally, Rule 8.4(c) states that a lawyer also engages in

professional misconduct if he "engage[s] in conduct involving dishonesty, fraud, deceit or

misrepresentation which reflects adversely on the lawyer's fitness to practice law." *Id.* 8.4(c).

Ms. Pfeiffer's actions of counseling Mr. Hall to enter into an agreement to transfer

encumbered property to a third party without the lienholder's consent in order to secure payment

of her attorney fees by the third party, which ultimately subjected Mr. Hall to the possibility of

denial of his discharge, contravenes the competent, honest manner in which this Court expects the

members of its bar to govern their practice at all times.[6] Ms. Pfeiffer's actions also defy a lawyer's

---

[6] In this vein, the Court must note that, during the September 8, 2016 hearings, Ms. Pfeiffer referenced no less than three times that the location at which the Vehicle was to be stored by Sperro changed between the time she became aware of the program (apparently at some point in 2015) and when Mr. Hall signed the agreement with Sperro. Transcript of September 8, 2016 hearings, at 6-7 (stating that Sperro "was supposed to be housing the vehicles locally and then liquidating them on behalf of the creditors" but "in December . . . we found out that [the Sperro representative] had changed his practices"); *id.* at 9-10 ("The collateral was supposed to be stored regionally within a local region for it. Yes, Sperro changed their practices and started transporting the collateral long distances for it. But as was originally printed, it was that they had like little hubs that they presented that they stored the collateral at . . . ."); *id.* at 17 ("I would never have gone into this program if I were aware of the sight—the facts that came out after we'd already committed to it."). However, the agreement Mr. Hall entered into with Sperro, dated December 11, 2015, clearly provides the possible locations where the Vehicle

duty to refrain from counseling or assisting a client in the commission of criminal or fraudulent

conduct.[7]  Finally, such actions offend Ms. Pfeiffer's professional obligation to refrain from

dishonest, fraudulent, or deceitful conduct that adversely reflects on her honesty, trustworthiness,

or fitness to practice law.

Therefore, the Court finds that Ms. Pfeiffer should appear and show cause why her actions

do not violate Virginia Rules of Professional Conduct 1.1, 1.2(c), 8.4(b), and 8.4(c); why she should

not be held in contempt; and why appropriate sanctions should not be assessed against her as a result

of the actions detailed above, including, but not limited to, imposition of a monetary fine, suspension

---

would be stored: "Sperro agrees to take possession of, transport, and provide storage on a daily basis of the below-described vehicle(s) in either of its secure outdoor storage facilities located at 2534 Bluff Road, Indianapolis, Indiana 46225 and 2334 South California Street, Indianapolis, Indiana 46225 (the 'facilities')." *See* Motion to Examine, Exhibit B, Transporting and Storage Authorization Agreement, dated December 11, 2015, at 1.  Paragraph 5 of the agreement also sets forth the two aforementioned locations at which the Vehicle would be stored.

[7] It appears that Virginia Code § 18.2-115 may have been violated here.  Section 18.2-115 provides:

> Whenever any person is in possession of any personal property, including motor vehicles or farm products, in any capacity, the title or ownership of which he has agreed in writing shall be or remain in another, or on which he has given a lien, and such person so in possession shall fraudulently sell, pledge, pawn or remove such property from the premises where it has been agreed that it shall remain, and refuse to disclose the location thereof, or otherwise dispose of the property or fraudulently remove the same from the Commonwealth, without the written consent of the owner or lienor or the person in whom the title is, or, if such writing be a deed of trust, without the written consent of the trustee or beneficiary in such deed of trust, he shall be deemed guilty of the larceny thereof.

Va. Code Ann. § 18.2-115.  While a determination of whether the conduct here constitutes a violation of this or any other section of either the United States or the Virginia Codes defining criminal activity is, of course, beyond the purview of this Court, the actions in which Ms. Pfeiffer counseled Mr. Hall to participate arguably appear to be in violation of the unlawful action quoted in the aforementioned code section.

of her privilege to practice before this Court, or permanent disbarment from practice before this Court.

The Court will conduct a Preliminary Hearing on this Order to Show Cause on Thursday, November 3, 2016, at 10:00 a.m. at the United States Bankruptcy Court, Courtroom 1, Fourth Floor, 600 Granby Street, Norfolk, Virginia 23510. The Court ORDERS Edrie A. Pfeiffer, Esquire, to personally appear at the Preliminary Hearing for the purpose of scheduling a Final Hearing, at which Ms. Pfeiffer is ORDERED to show cause why, as a result of the actions detailed herein, (1) her actions do not violate Virginia Rules of Professional Conduct 1.1, 1.2(c), 8.4(b), and 8.4(c); (2) she should not be held in contempt; and (3) appropriate sanctions should not be assessed against her, including, but not limited to, imposition of a monetary fine, suspension of her privilege to practice before this Court, or permanent disbarment from practice before this Court.

The Court further ORDERS that the Clerk's Office is directed to open a miscellaneous proceeding on this matter.

The Clerk shall deliver a copy of this Order to Edrie A. Pfeiffer, Esquire, Hampton Roads Legal Services, 372 South Independence Boulevard, Suite 109, Virginia Beach, Virginia 23452, by certified mail, return receipt requested, as well as electronically through the Court's Bankruptcy Noticing Center. The Clerk shall also mail a copy of this Order to Brett Bud Hall, 1811 Craven Drive, Seffner, Florida 33584; Kenneth N. Whitehurst, III, Esquire, Assistant United States Trustee; and Anastasia Kezman, Esquire.

IT IS SO ORDERED.

Entered: September 27, 2016

STEPHEN C. ST. JOHN
Chief United States Bankruptcy Judge

Entered on Docket:  September 27, 2016

8

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION                        Attachment A

In re:

**BRETT BUD HALL**                      **Chapter 7**

    **Debtor.**                       **Case No. 16-70486-SCS**

**NAVY FEDERAL CREDIT UNION,**

    **Plaintiff,**                   **APN:**

**BRETT BUD HALL**

    **Defendant.**

## COMPLAINT OBJECTIING TO DISCHARGE AND TO DETERMINE THE DISCHARGEABILITY OF DEBT

**COMES NOW**, Navy Federal Credit Union ("NFCU"), by counsel, and files this Complaint to object to the Debtor's chapter 7 discharge pursuant to 11U.S.C. §727(c)(1), §727(a)(2)(A) and (a)(5), and to determine the dischargeability of NFCU's secured debt pursuant to 11U.S.C.§ 523(6), and states as follows to-wit:

1.    Brett Hall ("Debtor") filed the instant case for bankruptcy relief on February 17, 2016.

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C.§§ 157 and 1334 and 11 U.S.C §§ 727 and 523 and Federal Rule of Bankruptcy Procedure 7001. This is core proceeding within the meaning of 28 U.S.C.§ 157(b).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**Anastasia Kezman, Esq.**
**VSB#33325**
**Deborah Kirkpatrick, P.C.**
**Post Office Box 10275**
**Virginia Beach, VA 23450-0275**
**Ph: (757) 343-3869; Fax: (757) 233-0277**
**Anastasiak10@cox.net**
**Counsel for Navy Federal Credit Union**

4.      NFCU is the holder of a Promissory Note, Security Agreement and Disclosure in the original amount of $53,186.49, secured by a lien on a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820 ("Vehicle").  On the front page of the Note, Agreement and Disclosure, the Debtor, "Brett B. Hall" is identified as the "Applicant," with a signature date of April 20, 2015. (A copy of the Note, Agreement and Disclosure is attached and incorporated herein at Exhibit 1).

5.      On the Note, Agreement and Disclosure, the Debtor indicates that the purpose of the loan is for the purchase of a new vehicle.  In the section titled "Truth and Lending Disclosure," the Debtor "pledge[s] a security interest in the collateral described below", which is described as a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820 ("Vehicle").  See Exhibit 1.

6.      On the top of the Note, Agreement and Disclosure, there is a statement that says: "This document includes a Promissory Note, Security Agreement and a Truth-in Lending Disclosure.  Please read everything carefully. There are additional terms and conditions on the reverse side.  You are bound by those terms and conditions as well as those on this side."  See Exhibit 1.

7.      On the reverse side, under the section entitled "Security Agreement," it states: "The owner will defend the collateral against claims and demands of other persons and will not permit any other liens to the attached collateral. The owner … will not knowingly permit any action to impair its present value.  The owner will obtain written consent of Navy Federal prior to disposing of collateral." See Exhibit 1.

8.      NFCU is the holder of a Certificate of Title issued by the State of Virginia, which indicates that the owner of a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820, is Hall, Brett Bud, and the lien holder on this Vehicle is Navy Federal Credit Union. The lien on Title was established on April 29, 2015.  (A copy of

2

the Title is attached and incorporated herein as Exhibit 2.)

9.      The Vehicle at all times since the origination of the Note has been fully encumbered by NFCU's lien. Since the Debtor obtained possession of the Vehicle, there has never been any equity in the Vehicle for the benefit of the Debtor.

10.     Prior to filing of the instant bankruptcy petition, the Debtor defaulted on the Note.  As of the filing date, the payoff on the Note was $50,343.84 and the arrears were $1,821.56.

11.     Upon information and belief, the Debtor met and conferred with his bankruptcy counsel on or before December 2015.

12.     Upon information and belief, the Debtor, either directly or through counsel, contacted Sperro, LLC, a towing company, to negotiate the payment of Debtor's legal fees and costs associated with the filing of Debtor's bankruptcy petition.

13.     On December 11, 2015, the Debtor willfully and intentionally entered into and signed a Transporting and Storage Authorization Agreement ("TSSA") with Sperro, LLC, in exchange for Sperro, LLC's payment of Debtor's bankruptcy fees directly to Debtor's counsel.  Pursuant to the TSSA, the Debtor also agreed to pay the following: a $75.00 vehicle load and a $75.00 vehicle unload fee; a charge of $1.85 per mile to tow the Vehicle to Indiana from Virginia; a daily storage fee of $45.00 per day; a one-time key charge fee of $175.00 and a one time facility insurance fee of $250.00.  On the four corners of the TSSA, there is no monetary consideration provided by Sperro, LLC for its right to take possession of the Vehicle.  (A copy of the TSSA is attached and incorporated herein as Exhibit 3).

14.     The TSSA further provides " All transportation-related fees and the first ten (10) days of storage fees (the "Initial Fees") are due and payable on the

tenth (10th) day following Sperro's possession of the Vehicle.... Failure to pay

the Initial Fees by the fifteenth (15th) day following Sperro's possession of the

Vehicle shall result in the Owner being declared in default of this Agreement and

shall subject the Vehicle to mechanic's lien foreclosure proceedings ...pursuant to

Indiana Civil Code ... Owner understands that if any fees due hereunder are not paid

when due, Sperro is granted an express security interest in the Vehicle in addition to the

statutory mechanic's lien afforded to Sperro under Indiana law."  See Exhibit 3.

     15.    On Official Form 107, "Statement of Financial Affairs for Individuals

Filing for Bankruptcy" signed under penalty of perjury by the Debtor, under Part 7, in

answer to question 16: "Within 1 year before you filed for bankruptcy, did you or anyone

else acting on your behalf pay or transfer any property to anyone you consulted about

seeking bankruptcy or preparing a bankruptcy petition," the Debtor responded:

"Hampton Roads Legal Services received $1,835.00 from Sperro, LLC in December

2015."  Further, in the Petition's Disclosure of Compensation of Attorney for the Debtor,

Debtor's counsel acknowledges the receipt of $1,835.00 from Sperro, LLC.

     16.    On Official Form 107, "Statement of Financial Affairs for Individuals

Filing for Bankruptcy" signed under penalty of perjury by the Debtor, under Part 7, in

answer to question 18: "Within 2 years before you filed for bankruptcy, did you sell,

trade, or otherwise transfer any property to anyone, other than property transferred in the

ordinary course of your business or financial affairs," the Debtor's schedule reflects the

2015 Toyota Tacoma was transferred to Sperro, and specifically states that "Sperro paid

$1,835 directly to Hampton Roads Legal Services to pay for Mr. Halls Bankruptcy" in

December 2015.

     17.    Official Form 108, "Statement of Intention for Individuals filing

Under Chapter 7" signed under penalty of perjury by the Debtor, under Part 1, after the

Debtor identifies NFCU as the creditor that has a secured claim on the 2015 Toyota

Tacoma, the Debtor then indicates that he intends to surrender this collateral,

which is currently located at "5009 Jeanne St., Virginia Beach, VA 23462."

Contrary to this disclosure, upon information and belief, the collateral is not

located at 5009 Jeanne St., Virginia Beach, VA 23462, and the Debtor did not

surrender the property to NFCU. Instead, the Debtor willfully and intentionally

transferred possession of the collateral to Sperro, LLC approximately two months

prior to the filing of the instant case, and the Vehicle was transferred to Michigan

by Sperro, LLC pursuant to the TSSA that the Debtor signed on December 15,

2016. This transfer was made to the detriment of NFCU and its interest in the

Vehicle.

     18.    Prior to the removal of the Vehicle from the State of Virginia,

NFCU was unaware of the existence of the TSSA and of the transfer of the

Vehicle from the Debtor's possession to Sperro, LLC, and its transportation to

the State of Michigan.

     19.    At no time did NFCU consent to the terms and conditions of the

TSSA or to the transfer of the Vehicle into the possession of Sperro, LLC, or to

the transfer of the Vehicle to the State of Michigan.

     20.    Although NFCU has never received a notice of mechanic's lien sale

by Sperro, LLC, NFCU asserts and alleges that Sperro, LLC may have

fraudulently sold the 2015 Toyota Tacoma in accordance with its fraudulent

scheme executed through the terms of the TSSA. NFCU has attempted to contact

Sperro, LLC, and it refuses to respond to its inquiries regarding the location of

the Vehicle or the terms upon which the Vehicle can be released to the

possession of the lienholder, NFCU. Therefore, NFCU must assume that Sperro,

LLC no longer has the Vehicle and it is likely to have been sold.

     21.    In light of these alleged facts and circumstances, NFCU submits that

the Debtor's discharge should be denied in accordance with 11 U.S.C. § 727 (a)(2)(A) as

the Debtor, with intent to hinder, delay or defraud a creditor … has transferred, removed,

destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed, property of the Debtor (namely the 2015 Toyota Tacoma,) within one year before the date of the filing on the petition.

     22.    The Debtor's intent to hinder, delay and defraud NFCU can be inferred from the Debtor's actions and from the facts and circumstances surrounding his willful and voluntary transfer of NFCU's collateral to Sperro, LLC.  At the time the Debtor entered into the TSSA with Sperro, LLC, the Debtor had no legitimate need for the transportation and storage services of Sperro, LLC, but rather, entered into the TSSA for the sole purpose of having Sperro, LLC pay for the Debtor's legal fees and costs associated with filing of the instant Chapter 7 Petition.  The Debtor's voluntary transfer of possession of NFCU's collateral pursuant to the TSSA was done with no intention of paying any of the fees and costs agreed to by him in the TSSA, and with no intention of recovering the Vehicle. The Debtor's intentional transfer of possession of NFCU's collateral pursuant to the TSSA was done with reckless disregard of the injury he would cause to NFCU by surrendering possession of NFCU's collateral. Likewise, the Debtor's willful transfer of possession of NFCU's collateral pursuant to the TSSA was done with reckless disregard to the warranties and promises he made to NFCU in the Note, Agreement and Disclosure. Namely, the Debtor willfully and intentionally entered into and signed the TSSA, and willfully gave possession of NFCU's collateral to Sperro, LLC, in violation of his promises "to defend the collateral against claims and demands of other persons," and "to not knowingly permit any other liens to the attached collateral or permit any action to impair its present value." See Exhibit 1.  Moreover, the Debtor willfully and intentionally entered into and signed the TSSA, and willfully gave possession of NFCU's collateral to Sperro, LLC, in violation of his promise to "obtain written consent of Navy Federal prior to disposing of collateral." See Exhibit 1. The Debtor's actions were willful and done with intent to hinder, delay or

defraud NFCU, and therefore, his discharge should be denied pursuant to 11 U.S.C.§ 727(a)(2)(A).

23.     In light of these alleged facts and circumstances, NFCU submits that the Debtor's discharge should be denied in accordance with 11 U.S.C. § 727 (a)(5) as the Debtor has failed to explain satisfactorily any loss of assets, namely the loss of the 2015 Toyota Tacoma. The Debtor's explanation that this estate asset was voluntarily turned over to Sperro, LLC, without a legitimate need for "transportation and storage services" and in order for Sperro, LLC to pay for his legal fees and costs is simply an unsatisfactory and unacceptable explanation for why the Debtor no longer has possession of the 2015 Toyota Tacoma.

24.     In light of these alleged facts and circumstances, NFCU submits that the debt owed to it in the amount of $50,343.84 should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), for willful and malicious injury to NFCU by the Debtor. Contrary to the warranties made by the Debtor in the Note, Agreement and Disclosure, NFCU submits that the Debtor knowingly and willfully disposed of the collateral without the written consent of NFCU, knowingly and willfully permitted an action to impair the collateral's value to NFCU, knowingly and willfully permitted the attachment of a fraudulent mechanic's lien to the collateral, and knowingly and willingly subjected the 2015 Tacoma to a possible mechanics' lien sale by Sperro, LLC.

25.     As a result of the Debtor's voluntary and willful actions, NFCU has been damaged in the principal amount of $50,343.84, plus accruing finance charges and legal fees and cost. NFCU has suffered an injury and monetary damages in that it can no longer obtain possession of its collateral in order to liquidate its value as bargained for in the Note, Agreement and Disclosure.

26.     The Debtor's malice and reckless disregard for the injury sustained by NFCU can be inferred from Debtor's voluntary and willful actions. Namely, the Debtor

7

willfully and intentionally entered into a fraudulent scheme with Sperro, LLC to transfer possession of NFCU's collateral to Sperro, LLC by signing the TSSA, and then subsequently willfully and voluntarily transferred possession of the collateral to Sperro. The Debtor made this transfer with no intention of paying the fees and cost agreed to by him in the TSSA, and with no intention of recovering the Vehicle. Likewise, the Debtor made this voluntary transfer of NFCU's collateral in direct breach of the warranties and promises he made to NFCU through the Note, Disclosure and Security Agreement. As a result of the Debtor's willful and malicious behavior, NFCU has been damaged in the principal amount of $50,343.84, plus accruing finance charges and legal fees and costs, and such debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

27.    NFCU further requests that this Court award it reasonable attorney's fees and costs incurred in connection with the filing of this Complaint.

**WHEREFORE** Navy Federal Credit Union hereby requests that this Court enter an Order declaring that the debtor's discharge be denied pursuant to 11 U.S.C§§ 727(a)(2)(A) and/or 727(a)(5), and/or in the alternative, that the secured debt owed to NFCU, in the amount of $50,343.84, plus accruing interest and legal fees, be declared non-dischargeable pursuant to 11 U.S.C.§ 523(a)(6), and that the Order provides for NFCU's recovery of legal fees and costs incurred in connection with the filing of this Complaint, and for such further relief as this Court deems just and appropriate.

**DATED** this 12th day of May 2016.

NAVY FEDERAL CREDIT UNION

By:    /s/ Anastasia Kezman
         Anastasia Kezman

Anastasia Kezman, Esq.
VSB# 33325
Deborah Kirkpatrick, P.C.

P.O. Box 10275
Virginia Beach, VA 23450
Anastasiak10@cox.net
Ph: (757) 343-3869; Fax: (757) 233-0277

## PROOF OF SERVICE

I hereby certify that a true copy of the foregoing Complaint to Object to the
Debtor's Discharge and to Determine Dischargeability of Debt was transmitted
electronically to Debtor's counsel, Edrie Pfeiffer, Esq., and to the Trustee, Carolyn
Camardo, and was mailed postage pre-paid to the Debtor at 5009 Jeanne St., Virginia
Beach, VA 23462.

/s/ Anastasia Kezman
Anastasia Kezman

B104 (FORM 104) (08/07)

EDVA

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>NAVY FEDERAL CREDIT UNION | **DEFENDANTS**<br>BRETT BUD HALL |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Anastasia P. Kezman, Esq., Deborah S. Kirkpatrick, PC<br>P.O. Box 10275, Virginia Beach, VA 23450-0275<br>(757) 343-3869 | **ATTORNEYS** (If Known)<br><br>Edrie Pfeiffer, Esq.,<br>372 S. Independence Pkwy, Ste. 109<br>Virginia Beach, VA 23452 |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor      ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

NFCU seeks an order declaring that the Debtor's discharge be denied pursuant to 11 U.S.C.§§ 727(a)(2)(A) & (a)(4), and/or in the alternative, that the Order declare that the secured debt owed to NFCU by the Debtor in the amount of $50,343.84, plus accruing interest and fees, be deemed non-dischargeable pursuant to 11 U.S.C. Section 523(a)(6).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other<br><br>**FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property<br><br>**FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)<br><br>**FRBP 7001(4) – Objection/Revocation of Discharge**<br>☑ 41-Objection / revocation of discharge - §727(c),(d),(e)<br><br>**FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation<br><br>**FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>        actual fraud<br>☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>        **(continued next column)** | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☑ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>        (other than domestic support)<br>☐ 65-Dischargeability - other<br><br>**FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other<br><br>**FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest<br><br>**FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment<br><br>**FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>        if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 50, 343.84 |

| Other Relief Sought<br>Attorney's Fees and Costs |
|---|

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>BRETT BUD HALL | BANKRUPTCY CASE NO.<br>16- 70486-SCS | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Virginia | DIVISION OFFICE<br>Norfolk | NAME OF JUDGE<br>Stephen St. John |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Anastasia P. Kezman, Esq. | | |
| DATE<br>05/12/16 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Anastasia P. Kezman, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

**NAVY FEDERAL Credit Union**

Promissory Note, Security Agreement and Disclosure. Please read everything carefully. There are additional terms and conditions on the reverse side. You are bound by those terms and conditions as well as those on this side. Navy Federal Credit Union is identified in this document as "Navy Federal" and the Applicant (Member)/Co-applicant and any GUARANTOR will be identified as "Applicant". Do not alter this document. Notify us if a change is necessary. Verify all completed spaces. Complete signatures where indicated with a ► below.

| | |
|---|---|
| Applicant's Name and Address | 20151081713120 |
| | Date: 04/20/15 |
| BRETT B HALL<br>1575 GATOR BLVD<br>EWTGLANT MPBC N7<br>VIRGINIA BCH VA 23459-8739 | Loan No. 37-93 |

| Purpose of Loan | Check/Draft-Office Use Only |
|---|---|
| NEW VEHICLE | 0316245008 |

| Old Loan Balance(s) (if any) | Interest and Other Fees on Old Loan Balance(s) | Cash to Applicant | Amount Financed |
|---|---|---|---|
| $ 50,910.16 + | $ 31.66 + | $ 2,244.67 = | $ 53,186.49 |

**Truth-In-Lending Disclosure**

| Annual Percentage Rate | ( 4.540 ) % | Finance Charge $ | 9,017.46 |
|---|---|---|---|
| The cost of your credit as a yearly rate. | | The dollar amount the credit will cost you. | |
| Amount Financed $ | 53,186.49 | Total of Payments $ | 62,203.95 |
| The amount of credit provided to you on your behalf. | | The amount you will have paid after you have made all payments as scheduled. | |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 83 | $ 740.53 Monthly, beginning | 05/22/15 |
| 1 | $ 739.96 Final Payment | 04/22/22 |

Security: \ You are pledging a security interest in the collateral described below:

| Make and Year | Collateral Description | Serial Number |
|---|---|---|
| 2015 TOYOTA | TACOMA | 5TFUU4EN8FX133820 |
| Other: Shares and dividends in accordance with Section 107(11) of the Federal Credit Union Act. | | |

Prepayments: If you pay off early, you will not have to pay a penalty. You must pay all accrued unpaid interest and other charges and fees due before a payment is applied to the loan's principal balance.
Late Payment: You will be charged a $ 29 late fee for every month in which any amount due is not received by the payment due date.   OLD 2015-04-19-11,18.58.318919
See the Promissory Note and Security Agreement on the reverse side for information concerning nonpayment and default.

| Payment Protection Plan Fee $ 0.00 | | Primary Coverage Loss of Life | | Primary Coverage Loss of Life and Disability | | Primary Coverage Loss of Life, Disability, and Involuntary Unemployment | ☒ Protection Declined |
|---|---|---|---|---|---|---|---|
| The total amount of fees you will pay if voluntary Payment Protection Plan was selected. | | 0.0720 per $100 of loan balance per month | | 0.1608 per $100 of loan balance per month | | 0.3536 per $100 of loan balance per month | |
| Applicant Selecting Coverage   bbN   (initial) | | ☐ Joint Coverage Loss of Life | | ☐ Joint Coverage Loss of Life and Disability | | Joint Coverage Loss of Life, Disability, and Involuntary Unemployment | ☒ Protection Declined |
| | | 0.1440 per $100 of loan balance per month | | 0.3216 per $100 of loan balance per month | | 0.7072 per $100 of loan balance per month | |
| Guaranteed Asset Protection Fee - New Vehicle $ 199.00 | ☒ Protection Selected | | ☐ Protection Declined | | ☐ Not Eligible | | |
| Guaranteed Asset Protection Fee - Used Vehicle $ 199.00 | ☐ Protection Selected | | ☐ Protection Declined | | ☐ Not Eligible | | |
| The total amount of fees you will pay if voluntary Guaranteed Asset Protection was selected. | | | | | | | |

I/We understand that I/we can cancel either Payment Protection Plan or Guaranteed Asset Protection at any time by contacting Navy Federal Credit Union.
I/We certify that all information provided by me/us is true and complete (Section 1014, Title 18, U.S. Code makes it a federal crime to knowingly make a false statement or report in the application for the purpose of influencing a Federal Credit Union).

Applicant (Member) ___BRETT B HALL___ (Seal)

If Guarantor: I confirm as Guarantor that I have read and fully understand the provisions of the attached Notice to Cosigner (Guarantor) as required by Federal Regulation. While I will not share in the loan proceeds, I acknowledge that I am obligated to repay the loan.

Co-applicant (Member) or Guarantor (Non-member) ► _____ (Seal)

By signing this note as Owner of Collateral (Other than Applicant), I agree that my ownership interest in the collateral is subject to the Security Agreement only. I am not bound to pay the loan.

Owner of Collateral (Other than Applicant) ► _____ (Seal)

© 2014 Navy Federal NFCU 23L (6-14)        NOTICE: See other side for additional disclosure and Security Agreement



**Promise to Pay -** The Applicant(s), jointly and severally, waiving rights of demand and notice, hereby promise to pay to the order of Navy Federal the amount shown in the Truth-in-Lending disclosure on the Agreement and Disclosure statement at the Annual Percentage Rate (APR) as shown in the payment schedule. Interest is charged on a daily basis from the date of the Promissory Note. APR does not reflect the effect of deposits required to secure this loan.

**Consumer Credit Report -** I authorize and understand Navy Federal may obtain a consumer credit report to consider me for other products and services with Navy Federal.

**Agreement Acknowledgment -** Applicant acknowledges receipt of a completed copy of this Instrument and Disclosure statement prior to consummation of this loan. This agreement is entered into and shall be governed, in all respects, by federal law and, when necessary, the laws of the State of Virginia.

**Payment Protection -** If Payment Protection Plan or Guaranteed Asset Protection has been selected on the reverse, I/we request that protection and agree to the terms in this Agreement and Disclosure.

**Statutory Lien -** I/We acknowledge and pledge to Navy Federal a statutory lien in my/our shares and dividends on deposit in all joint and individual accounts and any monies held by Navy Federal now and in the future, to the extent of the loan made and any charges payable. The statutory lien does not apply to shares in any Individual Retirement Account.

I/We acknowledge and pledge to Navy Federal a security interest in the collateral securing loan(s) that I/We have with Navy Federal now and in the future, including any type of change or increase and any proceeds from the sale of such collateral and of insurance thereon, not to exceed the unpaid balance of the loan. This security interest in collateral securing other loans does not apply to loan(s) on my/our primary residence.

**Trust Account -** If this loan is made to a trust with a Navy Federal Trust Account number, each person signing the note is jointly and severally liable for the loan. When the trust is revocable, all trustee(s) and natural person applicant(s) must sign the note and will be jointly and severally liable for the loan.

**Navy Federal Agreement**
Navy Federal pays the total cash amount of the loan to the Applicant or to the Applicant's account in another institution designated by the Applicant, and has no financial ties with, or right of recourse against, the seller of the property from which an Applicant purchases and finances with Navy Federal.

**Payment Protection Plan -** is voluntary and is not required in order to obtain credit. You have the right to cancel at any time for any reason. Refer to the Payment Protection Plan Agreement and Disclosure for a full explanation of the terms and conditions of the program.

**Guaranteed Asset Protection -** is voluntary and is not required in order to obtain credit. You have the right to cancel at any time for any reason. Refer to the Guaranteed Asset Protection Agreement and Disclosure for a full explanation of the terms and conditions of the program. Guaranteed Asset Protection is only available for new and used vehicles.

**Security Agreement**
The owner(s) of the collateral warrant(s) that he/she is the owner of the collateral listed on the front; that there are no other liens or claims against the collateral; and that as the owner, he/she has the right to make this agreement. If the collateral described on the front is to be purchased with the proceeds of this loan, Applicant warrants the proceeds will not be used for any other purpose. If the collateral listed on the front is a boat or recreational vehicle, the owner(s) expressly agree(s), represent(s), and warrant(s) that it is and/or will be used for recreational purposes only.

The owner(s) will appoint Navy Federal as owner(s)' attorney-in-fact with limited authority to take such steps and accomplish such acts as Navy Federal may deem necessary to perfect and continue the perfection of the security interest created by this Security Agreement and to protect the collateral. The owner(s) will defend the collateral against claims and demands of other persons and will not permit any other liens to the attached collateral. The owner(s) will also keep the collateral in good condition and will not knowingly permit any action to impair its present value. The owner(s) will obtain written consent of Navy Federal prior to disposing of collateral. The owner(s) will: (1) maintain property insurance (from an insurer of owner(s)' choice) on the collateral covered by this Security Agreement against loss and damage with a collision deductible of no more than $500; (2) assign to Navy Federal the right to receive the proceeds of insurance, not to exceed the unpaid principal loan balance, interest, charges, and fees owed should the collateral be lost or damaged; (3) provide satisfactory proof that the required coverage remains in effect. Failure to comply with this may result in converting this loan's annual percentage rate to Navy Federal's prevailing rate for signature loans. We may also "force place" insurance at the Applicant's expense in the event the Applicant/owner(s) fail(s) to comply with the insurance requirement. Any force-placed insurance will cover the loan's principal balance only and will not cover any personal belongings. As promptly as possible and no later than three months, the Applicant/owner(s) will deliver to Navy Federal a Certificate of Title or other proof of ownership reflecting Navy Federal as the first lien holder. The Certificate of Title must also show the individual Applicant/owner(s) as the registered owner(s) of the collateral. Failure to comply with this request can result in a demand for payment in full and/or in Navy Federal converting this loan's annual percentage rate to Navy Federal's prevailing signature loan rate. If Navy Federal exercises its right to file for the lien-recorded title, filing fees will appear as a debit on the Applicant's savings account.

**Default Agreement**
The occurrence of any of the following shall constitute default: failure to make payments as specified; violation of any Applicant warranty given in this agreement; failure to perform in accordance with this agreement; discovery that any warranty or statement of Applicant made in connection with this transaction is incorrect in any material respect; use of the collateral in any manner prohibited by law; limitation on the collateral by being attached, levied upon, seized in any proceeding, or held by virtue of any lien, distress, or order; failure to adequately insure and properly register the collateral; suspension or revocation of registration certificate or Applicant's operating license; death, insolvency, business failure, or entry of a discharge in bankruptcy or receivership by or against the Applicant, Co-applicant/Guarantor or Owner of Collateral (other than Applicant) of any property of either. Navy Federal or its agent has the *right to take possession of the collateral without prior notice to the Applicant upon default.*

Any default by Applicant under any of the terms or provisions of any other agreement between Applicant and Navy Federal, whether existing now or in the future, shall constitute a default under all agreements. Under default, the balance due under this Note, plus any interest, charges, and fees shall become immediately payable without further notice to the Applicant at the option of Navy Federal. If the amount due is not paid immediately, Navy Federal shall have the right to take such action as is available to it under the law. Such action may include taking possession of all stated collateral and sell, or otherwise dispose of the same, or any part thereof, at public or private sale upon such terms as Navy Federal may elect, and apply the proceeds received from such a sale to the amounts owed. Applicant will be liable to Navy Federal for any deficiency to the extent permitted by law. In the event of default, all reasonable costs of collection, including but not limited to, court costs, expenses, and reasonable attorney's fees, will be paid by the Applicant. Navy Federal may also revoke any and all membership privileges previously extended to the Applicant (except the right to vote and to maintain a savings account) without prior notice to the Applicant.

The waiver by Navy Federal of any default by the Applicant shall not be a waiver of any subsequent default.

Applicant gives Navy Federal permission to: (1) obtain Applicant's Active Duty/Reserve address if Applicant is in default; (2) contact and receive from any person, including but not limited to Commanding Officer, other employer, credit grantor or landlord, state and federal agencies or branches thereof, and various departments and commands of Department of Defense, any information which they deem necessary to cure or collect said default.

The obligation of the Applicant to Navy Federal to repay that portion of this loan not covered by voluntary Payment Protection Plan or voluntary Guaranteed Asset Protection shall continue on to the Co-applicant/Guarantor's and the Applicant's heirs or estate.

You agree that if you do not make payments on your account in accordance with this agreement, you will accept calls from Navy Federal regarding your account at any telephone number provided by you (including cellular telephones). In addition, we may use pre-recorded voice messages or automatic dialing devices to contact you at any telephone number associated with your account. You agree such calls will not be "unsolicited" calls for the purpose of state and federal laws.

**Consumer Protection Notice:**
Any holder of this consumer credit contract is subject to all claims and defenses that the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

© 2014 Navy Federal NFCU 23L (6-14)



## COMMONWEALTH OF VIRGINIA
### DEPARTMENT OF MOTOR VEHICLES

# CERTIFICATE OF TITLE FOR A VEHICLE
### KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

THE DEPARTMENT OF MOTOR VEHICLES, COMMONWEALTH OF VIRGINIA, HEREBY CERTIFIES THAT AN APPLICATION FOR A CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS COMMONWEALTH, THAT THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE, AND THAT, FROM THE STATEMENTS OF THE OWNER AND THE RECORDS ON FILE WITH THIS DEPARTMENT, THE HEREON DESCRIBED VEHICLE IS SUBJECT TO THE SECURITY INTEREST RECORDS ON FILE WITH THIS DEPARTMENT, AND AS DESCRIBED HEREON, IF ANY. THE MOTOR VEHICLE LAWS OF THIS COMMONWEALTH ALSO PROVIDE THAT ALL TITLE AND REGISTRATION INFORMATION IN THE OFFICE OF THE DEPARTMENT OF MOTOR VEHICLES IS PRIVILEGED AND ONLY SUBJECT TO DISSEMINATION TO AUTHORIZED AGENCIES, BUSINESS ORGANIZATIONS OR AGENTS, GOVERNMENTAL ENTITIES AND INDIVIDUALS UNDER THE CONDITIONS SPECIFIED BY MOTOR VEHICLE CODE SECTIONS 46.2-208, 46.2-209 AND 46.2-210.

ESTABLISHED 04/29/15 294 ELT45 ORIGINAL

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | VEHICLE BODY | TITLE NO. |
|---|---|---|---|---|
| 5TFUU4ENBFX133820 | 2015 | TOYOTA | PICKUP | 61550130 |

| EMPTY WGT. | GROSS WGT. | GVWR | GCWR | AXLES | FUEL | SALES TAX PAID | ODOMETER | DATE ISSUED |
|---|---|---|---|---|---|---|---|---|
| 4031 | 5000 | 6000 | | 2 | GAS | 1324.27 | *000002* | 03/08/16 |

| OTHER PERTINENT DATA | ODOMETER BRAND | PRIOR TITLE NO. |
|---|---|---|
| 000273 | ACTUAL | |

Lienholder name(s) and address(es):
NAVY FEDERAL CREDIT UNION
PO BOX 25109
LEHIGH VALLEY PA 18002

THIS IS NOT A TITLE NUMBER
G30505415



**LIEN RELEASE**
INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED
By _____
TITLE _____ DATE _____

Name(s) and addresses) of vehicle owners:
HALL,BRETT BUD
1575 GATOR BLVD STE 243
VIRGINIA BEACH VA 23459-8739

**VOID IF ALTERED**

---

**A** — **ASSIGNMENT OF TITLE BY OWNER • NOTIFY DMV WHEN VEHICLE IS SOLD**

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following (printed name and address of Buyer(s)).

Buyer(s) Name _____

Street _____ City, State, Zip _____

I certify to the best of my knowledge that the odometer reading is: ☐ ACTUAL Mileage ☐ NOT ACTUAL Mileage (odometer discrepancy) ☐ IN EXCESS of Mechanical Limits ☐ Model year is 10 years or older and was exempt from odometer disclosure in prior state of title (applicant must present out-of-state title showing exemption)

ODOMETER READING (No Tenths) _____

DATE OF SALE _____
SALE PRICE _____

Signature of Seller(s) _____ Printed Name of Seller(s) _____

Signature of Buyer(s) _____ Printed Name of Buyer(s) _____

I am aware of the above odometer certification made by the Seller(s)

I am aware of the above odometer certification made by the Seller(s)

VSA3L

Dealer's No. _____ Licensing Jurisdiction _____

---

NAVY FEDERAL CREDIT UNION
C/O NAVY FEDERAL CREDIT UNION,
820 FOLLIN LANE
ATTN: TIFFANY KOUTS
VIENNA VA 22180



2 1 99

# Transporting and Storage Authorization Agreement

This TRANSPORTING AND STORAGE AUTHORIZATION AGREEMENT (the "Agreement") is entered into on the
_11_ day of _DECEMBER_ 20 _15_, by and between _Brett   B   Hall_ ("Owner") whose address is
_5009 JEANE ST, Virginia Beach, VA  23462_, and Sperro LLC, an Indiana limited liability company
whose address is P.O. Box 163, Camby, Indiana 46113 ("Sperro").   _757 - 305 -7175_

**THE VEHICLE(S).** Sperro agrees to take possession of, transport, and provide storage on a daily basis of the below-described vehicle(s) in either of its secure outdoor storage facilities located at 2534 Bluff Road, Indianapolis, Indiana 46225 and 2334 South California Street, Indianapolis, Indiana 46225 (the "Facilities"). Owner represents and warrants that he/she/it is an/the owner of the below-described vehicle(s) (the "Vehicle(s)") and is authorized to execute and enter into this Agreement.

Year _2015_ Make _TOYOTA_   Model _TACOMA_   VIN# _5TFUU4EN8FX133820_

**PROOF OF OWNERSHIP AND PERMISSION.** Upon execution of this Agreement, Owner shall provide Sperro satisfactory proof of ownership of the Vehicle(s). Further, if any person other than the registered owner(s) of the Vehicle(s) is authorizing the transport and/or storage of the Vehicle(s), Sperro shall be provided with satisfactory proof of written permission from the registered owner(s) of the Vehicle(s) that such person is authorized to enter into this Agreement. The form of such written permission shall be satisfactory to Sperro, at its sole discretion, and shall include, but not be limited to, a notarized writing signed by the registered owner(s) of the Vehicle(s) along with satisfactory proof of ownership.

**AUTHORIZATION OF TRANSPORT.** By entering into this Agreement, Sperro is authorized to transport the Vehicle(s) from point of origin to the Facilities. Owner acknowledges, accepts and agrees that in addition to the transportation fee of $1.85 per mile from the point of origin to the Facilities, there is a $75.00 load fee and a $75.00 unload fee per Vehicle as well as a one-time key charge fee of $175.00 and a one-time facility insurance fee of $250.00. These transportation-related fees are nonnegotiable and subject to change by Sperro without prior notice.

**AUTHORIZATION OF STORAGE.** The Vehicle(s) will be stored outdoors, in a secured facility located at either 2534 Bluff Road, Indianapolis, Indiana 46225 or 2334 South California Street, Indianapolis, Indiana 46225, on a day-to-day basis. Owner acknowledges, accepts and agrees to the daily storage fee of $45.00 per day which will begin as of the date that he/she/it enters into this Agreement and shall continue for so long as Sperro is in possession of the Vehicle(s).

**PAYMENT OF FEES.** All transportation-related fees and the first ten (10) days of storage fees (the "Initial Fees") are due and payable on the tenth (10th) day following Sperro's possession of the Vehicle(s), without the necessity of invoicing. Failure to pay the Initial Fees by the fifteenth (15th) day following Sperro's possession of the Vehicle(s) shall result in Owner being declared in default of this Agreement and shall subject the Vehicle(s) to mechanic's lien foreclosure proceedings as discussed below. After payment of the Initial Fees, any additional storage fees shall be immediately due upon invoicing by Sperro.

**CONDITION OF VEHICLE(S).** Sperro agrees to keep the Vehicle(s) in as good condition as it/they was/were in when received from Owner and to deliver the Vehicle(s) to Owner at the termination of this Agreement in that same condition (with the exception of any mileage added to the Vehicle(s) during transport), normal wear and tear excepted. The purpose of this Agreement is only for the transportation and storage of the Vehicle(s). Owner may not use the Facilities for any other purpose including, without limitation, the storage of anything other than the Vehicle(s) and/or the maintenance or servicing of the Vehicle(s).

**DEFAULT.** Owner shall be in default of this Agreement if Owner fails to pay any fees arising hereunder when due or defaults on any other term or condition of this Agreement. Default shall subject the Vehicle(s) to mechanic's lien sale proceedings pursuant to the Indiana Civil Code. Such lien sale proceedings shall include the recovery of, but not be limited to, lien sale processing and collections charges not to exceed the maximum amount allowed by law, but in no event less than $35.00 or more than $550.00 at the time lien sale notification documents are deposited in the U.S. Mail. Owner understands that if any fees due hereunder are not paid when due, Sperro is granted an express security interest in the Vehicle(s) in addition to the statutory mechanic's lien afforded to Sperro under Indiana law. In the event Owner defaults under this Agreement and/or abandons the Vehicle(s) at the Facilities, Sperro shall be entitled to a $175.00 administrative fee. Should Sperro have to retain a third-party collection agent to recover any sums due hereunder, Owner shall be responsible for all costs of collection, including any applicable attorneys' fees.

**HOURS OF OPERATION AND RETRIEVAL OF VEHICLE(S).** Upon payment in full of any fees due hereunder and the execution of a full release, this Agreement may be terminated and the Vehicle(s) may be retrieved from storage by Owner. Retrieval of the Vehicle(s) must be by prior appointment only at any time during Sperro's regular business hours which are between 10:00 a.m. and 4:00 p.m. daily, Tuesday thru Thursday. The Vehicle(s) must be retrieved from Sperro's facility located at 2534 Bluff Road, Indianapolis, Indiana 46225. Except as specifically set forth herein, no person other than Owner or his/her/its properly designated agent shall be authorized to retrieve the Vehicle from storage. Proper photo identification will be required of any person(s) retrieving the Vehicle(s) on behalf of Owner.

**NO HARMFUL MATERIALS.** Owner understands, acknowledges and agrees that no hazardous or noxious materials may be stored in the Vehicle(s) while at the Facilities.

**SEVERABLE.** If any part of the Agreement is declared invalid, it shall not affect the validity of any remaining portions, which portions shall remain in full force and effect.

**ASSIGNMENT.** Sperro may assign any or all of its rights, interests, and obligations hereunder without the necessity of obtaining Owner's consent.

**CONFIDENTIAL.** This Agreement and its terms are to remain strictly confidential. Disclosure of this Agreement or its terms is prohibited without the express written permission of the non-disclosing party. Any disclosure in violation of this provision shall be deemed a material breach of this Agreement.

**LIMITATION OF LIABILITY.** Sperro assumes no liability for loss, damage, or destruction, of any kind to the Vehicle(s), except any damage directly attributable to the gross negligence of Sperro. Further, Sperro assumes no liability for damage due to the faulty mechanical condition of the Vehicle(s) or any negligence due to the Owner, or for the loss of any personal items left in the Vehicle(s), or for the loss of use of the Vehicle while in Sperro's possession.

**CHOICE OF LAW/JURISDICTION/VENUE.** This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana. The parties hereto irrevocably submit to the exclusive jurisdiction of the state courts of Marion County, Indiana, for the purposes of any suit, action, or other proceeding arising out of this Agreement and agree not to commence any such suit, action, or other proceeding except in such court. Moreover, the parties irrevocably and unconditionally waive any objection to the laying of venue in any such suit, action, or other proceeding in the state courts of Marion County, Indiana.

**GENERAL.** This Agreement constitutes the entire agreement among the parties and supersedes all prior agreements or understandings among the parties with respect thereto. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement. This Agreement is valid only when signed by both parties. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Owner agrees to indemnify, hold harmless and defend Sperro from all claims, demands, actions or causes of actions, including attorney fees, and all costs that might result from Owner entering into this Agreement with Sperro. Sperro is not responsible for any loan/lien payments that may be due on the Vehicle(s) and strongly recommends that Owner keep any loan/lien payments current.

BY SIGNING THIS AGREEMENT, OWNER ACKNOWLEDGES HAVING READ AND AGREED TO EACH AND EVERY TERM AND CONDITION OF THIS AGREEMENT.

Sperro LLC

By: _____

Print_____

Title_____

ID CODE_____

OWNER

By: _____

Print Brett B Hall

Title_____

DL # (FL)                    -297-0



**ODOMETER DISCLOSURE STATEMENT**
State Form 43230 (R3 / 5-13)
INDIANA BUREAU OF MOTOR VEHICLES

INSTRUCTIONS:   1.   In accordance with federal and state law, the seller of a motor vehicle must disclose the current mileage to a purchaser in writing upon transfer of ownership. The disclosure must be signed by the seller, including the printed name. If more than one person is a seller, only one seller is required to sign the written disclosure.
2.   The purchaser must sign the disclosure statement, including printed name and address, and return a copy to the seller.
3.   Complete this form in its entirety, in blue or black ink.

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines, imprisonment, or both.

I, Brett B Hall _____ residing at:
Printed name(s) of Seller(s)

5009 JEANNE ST. Virginia BEACH, VA 23462 certify to the best of my knowledge that the
Address of Seller(s) (number and street, city, state, and ZIP code)

odometer reading is the actual mileage of the vehicle described below unless one of the following statements is checked:

| Miles (no tenths) | | |
|---|---|---|
| 7649 | ☒ 1. | I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits. |
| | ☐ 2. | I hereby certify that the odometer reading is NOT the actual mileage and should not be relied upon. WARNING - ODOMETER DISCREPANCY. |

| Vehicle Make | Vehicle Model | Vehicle Year | Vehicle Body Type |
|---|---|---|---|
| TOYOTA | TACOMA | 2015 | TRK |

| Vehicle Identification Number (VIN) | Transfer Date (month, day, year) |
|---|---|
| 5 T F U U 4 E N 8 F X 1 3 3 8 2 0 | DEC 11, 2015 |

I will not hold the Bureau of Motor Vehicles or the Bureau of Motor Vehicles Commission responsible for any discrepancy shown on the odometer reading. I, the undersigned, swear or affirm that the information entered on this form is correct. I understand that making a false statement may constitute the crime of perjury.

Signature(s) of Seller(s)
Brett B Hall

Date (month, day, year)
DEC 11, 2015

**PURCHASER'S INFORMATION**

I am aware of and acknowledge the above odometer certification made by the seller(s).

Signature(s) of Purchaser(s)                                        Date (month, day, year)

Printed Name(s) of Purchaser(s)

Address of Purchaser(s) (number and street)

| City | State | ZIP Code |
|---|---|---|
| | | |

Attachment B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

In re:                                    Case No. 16-70486-SCS
                                          Chapter 7
        Brett Bud Hall,
        Debtor.

## MOTION TO EXAMINE DEBTOR'S TRANSACTIONS WITH HIS ATTORNEY AND FOR DISGORGEMENT OF PAID FEES PURSUANT TO 11 U.S.C. § 329 WITH SUPPORTING MEMORANDUM

Judy A. Robbins, United States Trustee for Region Four, by counsel, moves this Court to examine the debtor's transactions with Edrie Pfeiffer, Esq. and Garfinkel and Pfeiffer, P.C., dba Hampton Roads Legal Services ("HRLS"), and order the return of all fees paid to HRLS by the debtor or on her behalf. In support of her motion, the U.S. Trustee states:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(a) and (b), and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### FACTS

3.      This case was commenced on February 17, 2016 by the filling of a voluntary petition for protection under chapter 7 of the United States Bankruptcy Code.

4.      Carolyn Camardo serves as chapter 7 trustee in this case.

Kenneth N. Whitehurst, III, Esq., AUST, VSB No. 48919
Cecelia Ann Weschler, Esq., VSB No. 28245
Nicholas S. Herron, Esq., NJSB No. 03007-2008, PASB No. 208988
Office of the United States Trustee
200 Granby Street, Room 625
Norfolk, VA 23510
(757) 441-6012

5.      The debtor, Brett Bud Hall, is an individual residing in Seffner, Florida. On the petition date, Mr. Hall was a resident of Virginia Beach, Virginia, within the Eastern District of Virginia.

6.      Debtor's counsel, Edrie Pfeiffer, is an attorney licensed to practice law in the Commonwealth of Virginia and admitted to practice before bar of this Court.

7.      Hampton Roads Legal Services is the fictitious name of Garfinkel and Pfeiffer, P.C., a Virginia Professional Corporation. Ms. Pfeiffer has operated HRLS for many years as a traditional local law firm.

8.      In addition to her role with HRLS, Ms. Pfeiffer is also a "partner" with a business called Upright Law, LLC ("Upright Law").  Upright Law is affiliated with Law Solutions Chicago LLC ("LSC").  LSC is an Illinois company that has been domesticated in Virginia. Upon information and belief, Kevin W. Chern is a member of Upright Law and LSC.

### The "New Car Custody Program"

9.      Through a June 18, 2015 email from Mr. Chern, Ms. Pfeiffer learned of a program available to bankruptcy debtors known as the "New Car Custody Program." A copy of the email is filed herewith as Exhibit A.

10.     In his email, Mr. Chern explains the program as follows:

Qualifications:

-Client wants to file for Chapter 7 bankruptcy.
-Client has a vehicle, motorcycle, boat, truck or other property that client is willing to surrender.
-The property intended to be surrendered has no equity.
-The property to be surrendered is worth greater than $5000.

Program Details:
-Client contacts Sperro LLC (Sperro), a towing and storage company, and arranges for Sperro to take custody of the debtor's property.

2

-At time of surrender of vehicle to Sperro, Client signs a towing, storage and custody agreement with Sperro. . .Sperro charges customary and reasonable fees for these services. . .

-UpRight notifies the finance company. . .that Sperro has custody of the vehicle. . .and they should recover the vehicle as soon as possible to avoid excessive storage fees.

Benefits to Client:

. . .

-Immediately upon placing the vehicle in Sperro's custody, Sperro will remit the entire legal fee plus filing fee to UpRight Law on client's behalf. . .

11.    On information and belief, debtors with "qualifying" vehicles (i.e., vehicles with no equity) are advised to enter the New Car Custody Program emphasizing that their bankruptcy legal fees would be paid.  Prospective debtors who participated in the New Car Custody Program were directed to surrender their vehicle to Sperro and to incur new debt by signing Sperro's towing and storage agreement.

12.    On information and belief, after the towing and storage contract is signed, Sperro takes possession of the prospective debtor's vehicle and transports it to a storage facility owned by Sperro, located in Indiana.

13.    Sperro charges inflated fees for towing and storage designed to permit it to assert a lien large enough to cover the debtor's attorney and filing fees plus an additional amount to benefit Sperro.

14.    After the debtor fails to pay the charges, Sperro asserts a lien against the vehicle and purports to exercise its lien rights to conduct an auction of the vehicle to obtain title to the vehicle.

15.    Sperro pays debtor's counsel the fees and costs the prospective debtor agreed to pay for a bankruptcy case and, on information and belief, retains the rest of the proceeds.

3

*Ms. Pfeiffer advises the debtor to utilize the "New Car Custody Program" to pay her fees.*

16.     Prior to filing his bankruptcy petition, the debtor owned three vehicles, including a 2015 Toyota Tacoma (the "Vehicle").

17.     The Vehicle was collateral for a debt owed to Navy Federal Credit Union. ("NFCU").

18.     On information and belief, the debtor sought advice from Ms. Pfeiffer about the Vehicle and the debt to NFCU for which it served as collateral.

19.     On information and belief, Ms. Pfeiffer advised the debtor that, under the "New Car Custody Program," Sperro would take the car, sell it, and use some of the proceeds to pay the fees and expenses of the debtor's chapter 7 bankruptcy filing.

20.     On December 11, 2015, the debtor signed a Towing and Storage Authorization Agreement from Sperro (the "Sperro Agreement"). A copy of the Sperro Agreement is filed herewith as Exhibit B.

21.     On information and belief, pursuant to the Sperro Agreement, the debtor, upon the advice of Ms. Pfeiffer, incurred the following charges: $75.00 to load the car; $1.85 per mile to tow the car from the debtor's residence in Virginia Beach to Indianapolis, Indiana[1]; $75.00 to unload the car; and $45.00 per day in storage charges. Pursuant to the Sperro Agreement, the debtor agreed to indemnify, hold harmless, and defend Sperro from all claims, demands, actions or causes of actions, including attorney's fees and all costs.

22.     Sperro's services were completely unnecessary, except as a way to pay for the debtor's bankruptcy filing. Apart from the fact that Ms. Pfeiffer advised him to do so, the debtor had no reason to enter into the Sperro Agreement other than to secure the payment of his attorney's fees.

---

[1] According to Google Maps, this is a distance of 726.6 miles. At $1.85 per mile, this totals $1,344.21.

23.     Pursuant to the Sperro Agreement, Sperro acquired a security interest in the Vehicle.

24.     Ms. Pfeiffer advised the debtor to participate in the "New Car Custody Program" to, among other things, fund payment of her legal fees for this bankruptcy case.

25.     Along with the Sperro Agreement, the debtor signed an Odometer Disclosure Statement from the Indiana Bureau of Motor Vehicles. A copy of this Statement is attached as Exhibit C. The Statement identifies the debtor as the "seller" of the Vehicle.

26.     Sperro provided the Statement form to the debtor to obtain the necessary paperwork to permit Sperro to convert the debtor's Vehicle and deprive NFCU of its security interest in the Vehicle.

27.     On information and belief, in December, 2015, an agent of Sperro took possession of the Vehicle and transferred it from the debtor's home.

28.     By entering into the Sperro Agreement upon the advice of Ms. Pfeiffer, the Debtor became contractually obligated to Sperro to pay towing and storage fees and other charges, and in the event of non-payment, Debtor granted Sperro a statutory lien on the Vehicle. As a result, under the Sperro Agreement, Sperro became a creditor of the Debtor, and it remains a contingent creditor because of the indemnity provision contained in the Sperro Agreement. The Debtor's Schedules do not list Sperro as a creditor.

29.     Based upon Ms. Pfeiffer's legal advice, the debtor transferred the Vehicle to Sperro in connection with and in contemplation of filing his bankruptcy case in order to pay the legal fees for Ms. Pfeiffer's bankruptcy representation and to pay his bankruptcy case filing fee.

30.     A transcript of vehicle record issued by the Virginia Department of Motor Vehicles on March 5, 2016 shows that the Vehicle was still titled in the debtor's name as of that date, with NFCU identified as lienholder.[2]

31.     Sperro was aware or should have been aware of the existing security interest on the Vehicle and was required to take steps to notify the creditor that it was in possession of the vehicle. The funds generated by Sperro's conversion of the Vehicle went to pay HRLS' and Ms. Pfeiffer's fees for the debtor's bankruptcy case, as well as to benefit Sperro. Upon information and belief, notwithstanding its security interest, NFCU received no funds from Sperro's conversion of the Vehicle.[3]

32.     According to the debtor's answer to question 16 on his Statement of Financial Affairs, Sperro paid HRLS at least $1,635.00 in December 2015.

33.     According to his Statement of Financial Affairs, question 18, the debtor transferred the Vehicle to Sperro in December, 2015. However, the debtor's Schedule A/B, line 3.3, incorrectly indicates that the Vehicle was located at 5009 Jeanne St. in Virginia Beach on the petition date.

34.     According to the debtor's Schedule D, line 2.2, the Vehicle, valued at $19,700, secured a debt to NFCU in the amount of $49,996, leaving the unsecured portion of NFCU's claim to be $30,296.

35.     The debtor's schedules make clear that the debtor had no equity in the Vehicle at the time of filing.

---

[2] The U.S. Trustee is unaware of whether Sperro actually sold the Vehicle. If it did, the DMV records do not reflect the sale.

[3] In fact, NFCU has filed a Complaint against the debtor arising from his transfer of the Vehicle to Sperro. *See Navy Federal Credit Union v. Hall*, APN: 16-07024-SCS. In its Complaint, NFCU seeks denial of the debtor's discharge and a finding that his debt to NFCU is non-dischargeable. In his response, the debtor asserts numerous affirmative defenses, including his reliance on the advice of counsel.

36.     The chapter 7 trustee conducted the 11 U.S.C. §341 meeting of creditors on

March 16, 2016.

37.     In response to the chapter 7 trustee's questions, the debtor testified as follows:

> Q:     Did you transfer or sell any of your assets in the last two
>        years?
>
> A:     The Tacoma, to Sperro.
>
> ***
>
> Q:     So you sold it to them, and the money went directly to pay
>        for your bankruptcy?
>
> A:     Yes ma'am.
>
> Q:     Okay. Did you get fair value? I mean, was the thing worth
>        any more than that, or just had a lien on it that covered the
>        rest of it?
>
> A:     That was for them to work out with Navy Federal.
>
> ***
>
> Q:     But you got the money from the sale of the Tacoma, and
>        you paid your bankruptcy attorney?
>
> A:     They paid the bankruptcy attorney directly.
>
> Q:     And that was before you filed the bankruptcy?
>
> A:     That was required in order to file, yes ma'am.
>
> Q:     So it would have all happened before you filed?
>
> A:     The vehicle was just picked up and taken to their facility
>        and they maintained property [sic] control of it.

38.     Under the New Car Custody Program as described by Chern, a "qualifying"

vehicle was one with no equity. Thus, Ms. Pfeiffer knew or should have known that the Vehicle,

like any "qualifying" vehicle, was subject to an existing security interest. Nevertheless, Ms.

Pfeiffer advised the debtor to participate in the Sperro scheme, and accepted from Sperro

proceeds which she knew or should have known were wrongfully obtained.

39.    This Court should examine the transactions between the debtor, HRLS, and Ms.

Pfeiffer pursuant to 11 U.S.C. §329, and order the disgorgement of all fees.

## ARGUMENT

Section 329 of the Bankruptcy Code and Fed. R. Bankr. P. 2017 " 'furnish the court with

express power to review payments to attorneys for excessiveness.'" *Burd v. Walters (In re*

*Walters)*, 868 F.2d 665, 667 (4th Cir.1989) (citing *In re Martin*, 817 F.2d 175, 180 (1st

Cir.1987)). Section 329(a) requires every attorney representing a debtor to file with the court a

statement of all compensation received during the preceding year, or to be received, in

connection with the bankruptcy. Section 329(b) requires bankruptcy judges to use the

information supplied under § 329(a) to determine whether "such compensation exceeds the

reasonable value of any such services." If it does, then "the court may cancel any such

agreement, or order the return of any such payment, to the extent excessive." 11 U.S.C. § 329;

Fed. R. Bankr.P. 2017.

Under § 329, ethical conflicts can diminish the value of services to a client, making the

fee charged "excessive." *See In re Soulisak*, 227 B.R. 77, 82 (E.D. Va. 1998) (stating § 329 and

state ethical rules permit the court to consider attorney's unethical conduct in analyzing

reasonableness of legal fees and ordering all fees to be disgorged in four chapter 7 cases because

lawyers violated Virginia ethics rules governing the unauthorized practice of law). Collier

reviews the philosophy undergirding § 329:

> Section 329 of the Bankruptcy Code is an example of the
> bankruptcy court's traditional concern for the need to scrutinize
> carefully the compensation paid to the debtor's attorney. Courts
> have long recognized that the debtor is in a vulnerable position and

8

is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. In order to prevent overreaching by an attorney, and provide protection to creditors, section 329 requires that an attorney submit a statement of compensation to be paid to enable the court to determine if the fees are reasonable. Thus, section 329 establishes "an important and valuable process that is statutorily mandated to insure that only reasonable, necessary, beneficial professional services and fees are charged against and paid by a prospective or prepetition debtor in bankruptcy."

3 Lawrence P. King *et al.*, COLLIER ON BANKRUPTCY ¶ 329.01, 329-4 to -5 (15th ed. rev.1998).

"Absent compliance with the law, no professional has an absolute right to their fees." *Soulisak*, 227 B.R. at 82. Ms. Pfeiffer advised the debtor to participate in the Sperro "New Car Custody Program." She did so to enable the debtor to pay her the attorney's fees needed to file this bankruptcy case through ill-gotten proceeds of the Sperro scheme. As a result of her advice, her client is now the defendant in an adversary proceeding filed by NFCU, seeking the denial of his discharge and a determination that the debt he owes to NFCU is non-dischargeable because of his participation in the Sperro scheme. But for Ms. Pfeiffer's advice to participate in the Sperro scheme, the debtor would not be forced to defend himself from the NFCU Complaint.

Ms. Pfeiffer's fees are in excess of the reasonable value of the services she has provided and are the fruits of the unlawful Sperro scheme. Any fee agreement between Ms. Pfeiffer or HRLS and the debtor (or Sperro) in this case should be cancelled by this Court, and Ms. Pfeiffer and HRLS ordered to disgorge any fees collected, and barred from collecting any fees in this case, for the reasons set forth above.[4]

---

[4] In most disgorgement cases, ill-gotten attorney's fees are returned to the debtor. In this case, because the fees appear to be the product of the improper conversion of the Vehicle, the Court should consider returning the fees to the chapter 7 estate for distribution to the appropriate lienholder. To be clear, other than for the purposes of this motion, the U.S. Trustee takes no position with respect to the validity or extent of NFCU's lien, or the ultimate validity of its Complaint against the debtor.

WHEREFORE, the United States Trustee respectfully requests that this Court:

A.    examine the debtor's transactions regarding payment to his attorneys;

B.    order that all legal fees paid to HRLS or Ms. Pfeiffer by the debtor, or on his

behalf, be returned, pursuant to 11 U.S.C. §329, to the debtor, or, in the alternative, to the chapter

7 estate;

C.    cancel any fee agreement between the debtor or Sperro, and HRLS or Ms.

Pfeiffer; and

D.    grant such other and further relief as the Court may find appropriate and just.

Respectfully submitted,

Judy A. Robbins
United States Trustee for Region Four

By /s/ Kenneth N. Whitehurst, III

Kenneth N. Whitehurst, III, Esq
Assistant U.S. Trustee

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of July 2016, service on all attorney Users in this case was
accomplished through the Notice of Electronic Filing, pursuant to CM/ECF Policy 9 of the
United States Bankruptcy Court for the Eastern District of Virginia, Case Management
Electronic Case Files (CM/ECF) Policy Statement, Version 09/04/09.


/s/ Kenneth N. Whitehurst, III

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

In re:                                          Case No. 16-70486-SCS
                                                Chapter 7
    Brett Bud Hall,
    Debtor.

## NOTICE OF MOTION TO EXAMINE
## DEBTORS' TRANSACTIONS WITH HIS ATTORNEY
## AND FOR DISGORGEMENT OF PAID FEES PURSUANT TO 11 U.S.C. § 329

Judy A. Robbins, the United States Trustee for Region Four has filed papers with the court requesting the court to examine the debtors' transactions with his attorney and for the return of all funds paid to his attorney by the debtor or on his behalf, pursuant to section 329 of the United States Bankruptcy Code, and Fed. R. Bankr. P. 2017.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in this motion, or if you want the court to consider your views on the motion, then you or your attorney must:

(1)     File with the court, at the address shown below, a written response 7 days prior to the date set for the hearing pursuant to Local Bankruptcy Rule 9013-1(H). If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

Clerk of Court
United States Bankruptcy Court
600 Granby Street
Norfolk, VA 23510

You must also mail a copy to:        The Office of the United States Trustee
                                     200 Granby Street, Room 625
                                     Norfolk, VA 23510

Kenneth N. Whitehurst, III, Esq., AUST, VSB No. 48919
Cecelia Ann Weschler, Esq., VSB No. 28245
Nicholas S. Herron, Esq., NJSB No. 03007-2008, PASB No. 208988
Office of the United States Trustee
200 Granby Street, Room 625
Norfolk, VA 23510
(757) 441-6012

(2)    Attend a hearing to be scheduled at a later date. You will receive separate notice of the
hearing. **If no timely response has been filed opposing the relief requested, the court
may grant the relief without holding a hearing.**

Under Local Bankruptcy Rule 9013-1, unless a written response to this motion
and supporting memorandum are filed with the Clerk of Court and served on the
moving party within 7 days before the scheduled hearing date, the Court may deem
any opposition waived, treat the motion as conceded, and issue an order granting the
requested relief without further notice or hearing.

If you or your attorney do not take these steps, the court may decide that you do not
oppose the relief sought in the motion and may enter an order granting that relief.

Date: July 22, 2016                     Attorney:  /s/Kenneth N. Whitehurst, III
                                                  Kenneth N. Whitehurst, III

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of July 2016, service on all attorney Users in this case was
accomplished through the Notice of Electronic Filing, pursuant to CM/ECF Policy 9 of the
United States Bankruptcy Court for the Eastern District of Virginia, Case Management
Electronic Case Files (CM/ECF) Policy Statement, Version 09/04/09.

/s/ Kenneth N. Whitehurst, III

2

**Edrie Pfeiffer**

| | |
|---|---|
| **From:** | Kevin Chern <chernesq@gmail.com> |
| **Sent:** | Thursday, June 18, 2015 1:45 PM |
| **To:** | partnerslist@uprightlaw.com |
| **Subject:** | New Car Custody Program at UpRight Law - Read Carefully |

Dear Valued Partners:

Over the last month, about 15% of our front end Senior Client Consultants have been offering a new program to clients as part of their bankruptcy matters that allows a client to surrender a vehicle to a towing and storage facility and have the cost of their bankruptcy case fully subsidized. This is how it works:

Qualifications:

-Client wants to file for Chapter 7 bankruptcy.
-Client has a vehicle, motorcycle, boat, truck or other property that the client is willing to surrender.
-The property intended to be surrendered has no equity.
-The property to be surrendered is worth greater than $5000.

Program Details:

-Client contacts Sperro LLC (Sperro), a towing and storage company, and arranges for Sperro to take custody of the debtor's property.
-At time of surrender of vehicle to Sperro, Client signs a towing, storage and custody agreement with Sperro whereby the client contracts with Sperro to load the vehicle, tow it to a facility, store it and maintain it until such time as the finance company picks up the vehicle. Sperro charges customary and reasonable fees for these services (e.g. $75 loading fee, $1,50 per mile towing, $45/day storage, etc.).
-UpRight notifies the finance company by certified mail return receipt requested within a couple of days that Sperro has custody of the vehicle, the location of the storage facility, contact information for Sperro and instructions that they should recover the vehicle as soon as possible to avoid excessive storage fees.

Benefits to Client:

-Client can immediately cancel insurance on the vehicle.
-Client no longer has to maintain the vehicle.
-Client no longer has to bear the expense or inconvenience of plating or storing the vehicle.
-Client does not have to worry about the repo man showing up at client's home or work.
-Creditor can be directed to Sperro instead of fielding calls related to the recovery of the vehicle.
-Client does not have to be worried about issues related to finance companies who refuse to pick up the vehicle.
-Immediately upon placing the vehicle in Sperro's custody, Sperro will remit the entire legal fee plus filing fee to UpRight Law on client's behalf.

Due Diligence

-Kevin Chern reviewed the program in detail with Felicia Burda, our UST Counsel, Mary Robinson, or Professional Responsibility Counsel and David Leibowitz, General Counsel of UpRight Law and Head of Litigation.
-Performed background check on ownership of Sperro.
-Rolled out program on a limited basis to test reaction of panel trustees, the UST and creditor/creditor counsel.
-Sperro is properly disclosed on the bankruptcy petition SOFA as the source of payment of client's legal fees.

During a welcome call, if a client says that they are arranging through us to surrender the car, this program is what they are referring to. We feel that this program is ethical, legally compliant and affords debtors the ability to relieve themselves of the custody of a vehicle they do not want and have their legal fees subsidized.

Please let me know if you have any questions or concerns or are interested in incorporating the Sperro vehicle custody program into your own practice.

Sincerely,

Kevin Chern
Managing Partner
UpRight Law / Allen Chern Law
79 W. Monroe Street, 5th Floor
Chicago, IL 60603
chernesq@gmail.com
T: 312-899-6175
F: 844-339-2926
www.UpRightLaw.com

Twitter: @kevinchern





www.linkedin.com/company/**upright-law**
www.facebook.com/**UpRightLaw**
https://**twitter**.com/**uprightlaw**

EXHIBIT B

# Transporting and Storage Authorization Agreement

This TRANSPORTING AND STORAGE AUTHORIZATION AGREEMENT (the "Agreement") is entered into on the
_11_ day of _DECEMBER_ 20 _15_, by and between _Brett B Hall_ ("Owner") whose address is
_5009 JEANE ST, Virginia Beach, VA 23462_, and Sperro LLC, an Indiana limited liability company
whose address is P.O. Box 163, Camby, Indiana 46113 ("Sperro"). _757-305-7175_

**THE VEHICLE(S).**  Sperro agrees to take possession of, transport, and provide storage on a daily basis of the below-
described vehicle(s) in either of its secure outdoor storage facilities located at 2534 Bluff Road, Indianapolis, Indiana
46225 and 2334 South California Street, Indianapolis, Indiana 46225 (the "Facilities").  Owner represents and
warrants that he/she/it is an/the owner of the below-described vehicle(s) (the "Vehicle(s)") and is authorized to
execute and enter into this Agreement.

Year _2015_ Make _TOYOTA_    Model _TACOMA_    VIN# _5TFUU4EN8FX133820_

**PROOF OF OWNERSHIP AND PERMISSION.**  Upon execution of this Agreement, Owner shall provide Sperro
satisfactory proof of ownership of the Vehicle(s).  Further, if any person other than the registered owner(s) of the
Vehicle(s) is authorizing the transport and/or storage of the Vehicle(s), Sperro shall be provided with satisfactory
proof of written permission from the registered owner(s) of the Vehicle(s) that such person is authorized to enter into
this Agreement.  The form of such written permission shall be satisfactory to Sperro, at its sole discretion, and shall
include, but not be limited to, a notarized writing signed by the registered owner(s) of the Vehicle(s) along with
satisfactory proof of ownership.

**AUTHORIZATION OF TRANSPORT.**  By entering into this Agreement, Sperro is authorized to transport the
Vehicle(s) from point of origin to the Facilities.  Owner acknowledges, accepts and agrees that in addition to the
transportation fee of $1.85 per mile from the point of origin to the Facilities, there is a $75.00 load fee and a $75.00
unload fee per Vehicle as well as a one-time key charge fee of $175.00 and a one-time facility insurance fee of
$250.00.  These transportation-related fees are nonnegotiable and subject to change by Sperro without prior notice.

**AUTHORIZATION OF STORAGE.**  The Vehicle(s) will be stored outdoors, in a secured facility located at either 2534
Bluff Road, Indianapolis, Indiana 46225 or 2334 South California Street, Indianapolis, Indiana 46225, on a day-to-day
basis.  Owner acknowledges, accepts and agrees to the daily storage fee of $45.00 per day which will begin as of the
date that he/she/it enters into this Agreement and shall continue for so long as Sperro is in possession of the
Vehicle(s).

**PAYMENT OF FEES.**  All transportation-related fees and the first ten (10) days of storage fees (the "Initial Fees") are
due and payable on the tenth (10th) day following Sperro's possession of the Vehicle(s), without the necessity of
invoicing.  Failure to pay the Initial Fees by the fifteenth (15th) day following Sperro's possession of the Vehicle(s)
shall result in Owner being declared in default of this Agreement and shall subject the Vehicle(s) to mechanic's lien
foreclosure proceedings as discussed below.  After payment of the Initial Fees, any additional storage fees shall be
immediately due upon invoicing by Sperro.

**CONDITION OF VEHICLE(S).**  Sperro agrees to keep the Vehicle(s) in as good condition as it/they was/were in
when received from Owner and to deliver the Vehicle(s) to Owner at the termination of this Agreement in that same
condition (with the exception of any mileage added to the Vehicle(s) during transport), normal wear and tear
excepted.  The purpose of this Agreement is only for the transportation and storage of the Vehicle(s).  Owner may not
use the Facilities for any other purpose including, without limitation, the storage of anything other than the Vehicle(s)
and/or the maintenance or servicing of the Vehicle(s).

**DEFAULT.**  Owner shall be in default of this Agreement if Owner fails to pay any fees arising hereunder when due or
defaults on any other term or condition of this Agreement.  Default shall subject the Vehicle(s) to mechanic's lien sale
proceedings pursuant to the Indiana Civil Code.  Such lien sale proceedings shall include the recovery of, but not be
limited to, lien sale processing and collections charges not to exceed the maximum amount allowed by law, but in no
event less than $35.00 or more than $550.00 at the time lien sale notification documents are deposited in the U.S.
Mail.  Owner understands that if any fees due hereunder are not paid when due, Sperro is granted an express
security interest in the Vehicle(s) in addition to the statutory mechanic's lien afforded to Sperro under Indiana law.  In
the event Owner defaults under this Agreement and/or abandons the Vehicle(s) at the Facilities, Sperro shall be
entitled to a $175.00 administrative fee.  Should Sperro have to retain a third-party collection agent to recover any
sums due hereunder, Owner shall be responsible for all costs of collection, including any applicable attorneys' fees.

**HOURS OF OPERATION AND RETRIEVAL OF VEHICLE(S).** Upon payment in full of any fees due hereunder and the execution of a full release, this Agreement may be terminated and the Vehicle(s) may be retrieved from storage by Owner. Retrieval of the Vehicle(s) must be by prior appointment only at any time during Sperro's regular business hours which are between 10:00 a.m. and 4:00 p.m. daily, Tuesday thru Thursday. The Vehicle(s) must be retrieved from Sperro's facility located at 2534 Bluff Road, Indianapolis, Indiana 46225. Except as specifically set forth herein, no person other than Owner or his/her/its properly designated agent shall be authorized to retrieve the Vehicle from storage. Proper photo identification will be required of any person(s) retrieving the Vehicle(s) on behalf of Owner.

**NO HARMFUL MATERIALS.** Owner understands, acknowledges and agrees that no hazardous or noxious materials may be stored in the Vehicle(s) while at the Facilities.

**SEVERABLE.** If any part of the Agreement is declared invalid, it shall not affect the validity of any remaining portions, which portions shall remain in full force and effect.

**ASSIGNMENT.** Sperro may assign any or all of its rights, interests, and obligations hereunder without the necessity of obtaining Owner's consent.

**CONFIDENTIAL.** This Agreement and its terms are to remain strictly confidential. Disclosure of this Agreement or its terms is prohibited without the express written permission of the non-disclosing party. Any disclosure in violation of this provision shall be deemed a material breach of this Agreement.

**LIMITATION OF LIABILITY.** Sperro assumes no liability for loss, damage, or destruction, of any kind to the Vehicle(s), except any damage directly attributable to the gross negligence of Sperro. Further, Sperro assumes no liability for damage due to the faulty mechanical condition of the Vehicle(s) or any negligence due to the Owner, or for the loss of any personal items left in the Vehicle(s), or for the loss of use of the Vehicle while in Sperro's possession.

**CHOICE OF LAW/JURISDICTION/VENUE.** This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana. The parties hereto irrevocably submit to the exclusive jurisdiction of the state courts of Marion County, Indiana, for the purposes of any suit, action, or other proceeding arising out of this Agreement and agree not to commence any such suit, action, or other proceeding except in such court. Moreover, the parties irrevocably and unconditionally waive any objection to the laying of venue in any such suit, action, or other proceeding in the state courts of Marion County, Indiana.

**GENERAL.** This Agreement constitutes the entire agreement among the parties and supersedes all prior agreements or understandings among the parties with respect thereto. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement. This Agreement is valid only when signed by both parties. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Owner agrees to indemnify, hold harmless and defend Sperro from all claims, demands, actions or causes of actions, including attorney fees, and all costs that might result from Owner entering into this Agreement with Sperro. Sperro is not responsible for any loan/lien payments that may be due on the Vehicle(s) and strongly recommends that Owner keep any loan/lien payments current.

BY SIGNING THIS AGREEMENT, OWNER ACKNOWLEDGES HAVING READ AND AGREED TO EACH AND EVERY TERM AND CONDITION OF THIS AGREEMENT.

Sperro LLC

By: _____

Print_____

Title_____

ID CODE_____

OWNER

By: _____

Print  Brett  B  Hall

Title_____

DL # (FL)                    -297-0

**EXHIBIT C**

**ODOMETER DISCLOSURE STATEMENT**
State Form 43230 (R3 / 5-13)
INDIANA BUREAU OF MOTOR VEHICLES

INSTRUCTIONS:
1. In accordance with federal and state law, the seller of a motor vehicle must disclose the current mileage to a purchaser in writing upon transfer of ownership. The disclosure must be signed by the seller, including the printed name. If more than one person is a seller, only one seller is required to sign the written disclosure.
2. The purchaser must sign the disclosure statement, including printed name and address, and return a copy to the seller.
3. Complete this form in its entirety, in blue or black ink.

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines, imprisonment, or both.

I, _Brett B Hall_ _____ residing at:
Printed name(s) of Seller(s)

_5009 JEANNE ST Virginia BEACH, VA 23462_ certify to the best of my knowledge that the
Address of Seller(s) (number and street, city, state, and ZIP code)

odometer reading is the actual mileage of the vehicle described below unless one of the following statements is checked:

| Miles (no tenths) |
|---|
| 7649 |

☒ 1. I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ 2. I hereby certify that the odometer reading is NOT the actual mileage and should not be relied upon. WARNING - ODOMETER DISCREPANCY.

| Vehicle Make | Vehicle Model | Vehicle Year | Vehicle Body Type |
|---|---|---|---|
| TOYOTA | TACOMA | 2015 | TRK |

| Vehicle Identification Number (VIN) | Transfer Date (month, day, year) |
|---|---|
| 5 T F U U 4 E N 8 F X 1 3 3 8 2 0 | DEC 11, 2015 |

I will not hold the Bureau of Motor Vehicles or the Bureau of Motor Vehicles Commission responsible for any discrepancy shown on the odometer reading. I, the undersigned, swear or affirm that the information entered on this form is correct. I understand that making a false statement may constitute the crime of perjury.

Signature(s) of Seller(s) _Brett B Hall_

Date (month, day, year) _DEC 11, 2015_

---

**PURCHASER'S INFORMATION**

I am aware of and acknowledge the above odometer certification made by the seller(s).

Signature(s) of Purchaser(s)

Date (month, day, year)

Printed Name(s) of Purchaser(s)

Address of Purchaser(s) (number and street)

| City | State | ZIP Code |
|---|---|---|
|  |  |  |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Attachment C

IN RE: BRETT BUD HALL

                                                CASE NO.: 16-70486 -SCS

            DEBTOR.                             CHAPTER: 13

NAVY FEDERAL CREDIT UNION                       AP No.: 16-07024

            PLAINTIFF,

V.

BRETT BUD HALL

            DEFENDANT.

AND

CAROLYN CAMARDO

            TRUSTEE

### DEFENDANT'S ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT OBJECTING TO THE DISCHARGE OF THE DEBTORS OR THE DISCHARGEABILITY OF CERTAIN DEBTS

Defendant Brett Bud Hall, hereby referred to as the "Defendant", for his answer to

Plaintiff's Complaint Objecting to Discharge and to Determine the Dischareability of Debt, state as

follows:

1. Brett Hall ("Debtor") filed the instance case for bankruptcy relief on February 17, 2016.

**ANSWER: ADMITTED**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

11 U.S.C. §§ 727 and 523 and Federal Rule of Bankruptcy Procedure 7001. This is core

proceeding within the meaning of 28 U.S.C. § 157(b).

**ANSWER: ADMITTED**

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

ANSWER: ADMITTED

4. NFCU is the holder of a Promissory Note, Security Agreement and Disclosure in the original amount of $53,186.49, secured by a lien on a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820 ("Vehicle"). On the front page of the Note, Agreement and Disclosure, the Debtor, "Brett B. Hall" is identified as the "Applicant," with a signature date of April 20, 2015. (A copy of the Note, Agreement, and Disclosure is attached and incorporated herein as Exhibit 1).

ANSWER: Neither admitted nor denied. Document speaks for itself.

5. On the Note, Agreement and Disclosure, the Debtor indicates that the purpose of the loan is for the purchase of a new vehicle. In the section titled "Truth and Lending Disclosure," the Debtor "pledge[s] a security interest in the collateral described below", which is described as a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820 ("Vehicle"). See Exhibit 1.

ANSWER: Neither admitted nor denied. Document speaks for itself.

6. On top of the Note, Agreement and Disclosure, there is a statement that says: "This document includes a Promissory Note, Security Agreement and a Truth-In-Lending Disclosure. Please read everything carefully. There are additional terms and conditions on the reverse side. You are bound by those terms and conditions as well as those on this side." See Exhibit 1.

ANSWER: Neither admitted nor denied. Document speaks for itself.

7. On the Reverse side, under the section entitled "Security Agreement," it states: "The owner will defend the collateral against claims and demands of other persons and will not permit any other liens to the attached collateral. The owner... will not knowingly permit any action to impair its present value. The owner will obtain written consent of Navy Federal prior to disposing of collateral." See Exhibit 1.

ANSWER: Neither admitted nor denied. Document speaks for itself.

8. NFCU is the holder of a Certificate of Title issued by the State of Virginia, which indicates that the owner of a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820, is Hall, Brett Bud, and the lien holder on this vehicle is Navy Federal Credit Union. The lien on Title was established on April 29, 2015. (A copy of the Title is attached and incorporated herein as Exhibit

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

2.)

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

9. The Vehicle at all times since the origination of the Note has been fully encumbered by NFCU's lien. Since the Debtor obtained possession of the Vehicle, there has never been any equity in the Vehicle for the benefit of the Debtor.

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

10. Prior to filing of the instant bankruptcy petition, the Debtor defaulted on the Note. As of the filing date, the payoff on the Note was $50,343.84 and the arrears were $1,821.56.

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

11. Upon information and belief, the Debtor met and conferred with his bankruptcy counsel on or before December 2015.

ANSWER: ADMITTED

12. Upon information and belief, the Debtor, either directly or through counsel, contacted Sperro, LLC, a towing company, to negotiate the payment of Debtor's legal fees and costs associated with the filing of Debtor's bankruptcy petition.

ANSWER: DENIED

13. On December 11, 2015, the Debtor willfully and intentionally entered into and signed a Transporting and Storage Authorization Agreement ("TSSA") with Sperro, LLC, in exchange for Sperro, LLC's payment of Debtor's bankruptcy fees directly to Debtor's counsel. Pursuant to the TSSA, the Debtor also agreed to pay the following: a $75.00 vehicle load and a $75.00 vehicle unload fee; a charge of $1.85 per mile to tow the Vehicle to Indiana from Virginia; a daily storage fee of $45.00 per day; a one-time key charge fee of $175.00 and a one time facility insurance fee of

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

$250.00. On the four corners of the TSSA, there is no monetary consideration provided by Sperro, LLC for its right to take possession of the Vehicle. (A copy of the TSSA is attached and incorporated herein as Exhibit 3).

### ANSWER: Denied.

14. The TSSA further provides "All transportation-related fees and the first ten (10) days of storage fees (the "Initial Fees") are due and payable on the tenth (10th) day following Sperro's possession of the Vehicle... Failure to pay the Initial Fees by the fifteenth (15th) day following Sperro's possession of the Vehicle shall result in the Owner being declared in default of this Agreement and shall subject the Vehicle to mechanic's lien foreclosure proceedings... pursual to Indiana Civil Code... Owner understands that if any fees due hereunder are not paid when due, Sperro is granted an express security interest in the Vehicle in addition to the statutory mechanic's lien afforded to Sperro under Indiana law." See Exhibit 3.

### ANSWER: Document speaks for itself.

15. On Official Form 107, "Statement of Financial Affairs for Individuals Filing for Bankruptcy" signed under penalty of perjury by the Debtor, under Part 7, in answer to question 16: "Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf paty or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition," the Debtor responded: "Hampton Roads Legal Services received $1835.00 from Sperro, LLC in December 2015." Further, in the Petition's Disclosure of Compensation of Attorney for the Debtor, Debtor's counsel acknowledges the receipt of $1,835.00 from Sperro, LLC.

### ANSWER: Document speaks for itself.

16. On Official Form 107, "Statement of Financial Affairs for Individuals Filing for Bankruptcy" signed under penalty of perjury by the Debtor, under Part 7, in answer to question 18: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs," the Debtor's schedule reflects the 2015 Toyota Tacoma was transferred to Sperro, and specifically states that "Sperro paid $1,835 directly to Hampton Roads Legal Services

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

to pay for Mr. Hall's Bankruptcy" in December 2015.

    ANSWER: Document speaks for itself.

    17. Official Form 108, "Statement of Financial Affairs for Individuals Filing for Bankruptcy" signed under penalty of perjury by the Debtor, Under Par 1, after the Debtor identifies NFCU as the creditor that has a secured claim on the 2015 Toyota Tacoma, the Debtor then indicates that he intends to surrender this collateral, which is currently located at "5009 Jeanne St., Virginia Beach, VA 23462." Contrary to this disclosure, upon information and belief, the collateral is not located at 5009 Jeanne St., Virginia Beach, VA 23462, and the Debtor did not surrender the property to NFCU. Instead, the Debtor willfully and intentionally transferred possession of the collateral to Sperro, LLC approximately two months prior to the filing of the instance case, and the Vehicle was transferred to Michigan by Sperro, LLC pursuant to the TSSA that the Debtor signed on December 15, 2016. This transfer was made to the detriment of NFCU and its interest in the Vehicle.

    ANSWER: Denied in part, admitted in part. Official Form 108 is not the Statement of Financial Affairs but the Statement of Intention for Individuals filing under Chapter 7. Admitted that this form listed the property as being at 5009 Jeanne St., Virginia Beach, VA 23462. The remainder is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 17 are neither admitted not denied on the basis that the Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.

    18. Prior to the removal of the Vehicle from the state of Virginia, NFCU was unaware of the existence of the TSSA and of the transfer of the Vehicle from the Debtor's possession to Sperro, LLC. and its transportation to the State of Michigan.

    ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

    19. At no time did NFCU consent to the terms and conditions of the TSSA or to the transfer of the Vehicle into the possession of Sperro, LLC, or to the transfer of the Vehicle to the

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

State of Michigan.

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

20. Although NFCU has never received a notice of mechanic's lien sale by Sperro, LLC, NFCU asserts and alleges that Sperro, LLC may have fraudulently sold the 2015 Toyota Tacoma in accordance with it's fraudulent scheme executed through the terms of the TSSA. NFCU has attempted to contact Sperro, LLC, and it refuses to respond it its inquiries regarding the location of the Vehicle or the terms upon with the Vehicle can be released to the possession of the lienholder, NFCU. Therefore, NFCU must assume that Sperro, LLC no longer has the Vehicle and it is likely to have been sold.

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

21. In light of these alleged facts and circumstances, NFCU submits that the Debtor's discharge should be denied in accordance with 11 U.S.C. § 727 (a)(2)(A) as the Debtor, with intent to hinder, delay or defraud a creditor... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed, property of the Debtor (namely the 2015 Toyota Tacoma,) within one year before the date of the filing of the petition.

ANSWER: Paragraph 21 is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 21 are neither admitted or denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.

22. The Debtor's intent to hinder, delay and defraud NFCU can be inferred from the Debtor's actions and from the facts and circumstances surrounding his willful and voluntary transfer of NFCU's collateral to Sperro, LLC. At the time the Debtor entered into the TSSA with Sperro, LLC, the Debtor had no legitimate need for the transportation and storage services of

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

Sperro, LLC, but rather, entered into the TSSA for the sole purpose of having Sperro, LLC pay for the Debtor's legal fees and costs associated with filing of the instant Chapter 7 Petition. The Debtor's voluntary transfer of possession of NFCU's collateral pursuant to the TSSA was done with no intention of paying any of the fees and costs agreed to him in the TSSA, and with no intention of recovering the Vehicle. The Debtor's intentional transfer of possession of NFCU's collateral pursuant to the TSSA was done with reckless disregard of the injury he would cause to NFCU by surrendering possession of NFCU's collateral. Likewise, the Debtor's willful transfer of possession of NFCU's collateral pursuant to the TSSA was done with reckless disregard to the warranties and promises he made to NFCU in the Note, Agreement and Disclosure. Namely, the Debtor willfully gave possession of NFCU's collateral to Sperro, LLC in violation of his promises "to defend the collateral against claims and demands of other persons," and "to not knowingly permit any other liens to the attached collateral or permit any action to impair its present value." See Exhibit 1. Moreover, the Debtor willfully and intentionally entered into and signed the TSSA, and willfully gave possession of NFCU's collateral to Sperro, LLC, in violation of his promise to "obtain written consent of Navy Federal prior to disposing of the collateral." See Exhibit 1. The Debtor's actions were willful and done with intent to hinder, delay, or defraud NFCU, and therefore, his discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

**ANSWER: Paragraph 22 is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 22 are neither admitted or denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.**

23. In light of these alleged facts and circumstances, NFCU submits that the Debtor's discharge should be denied in accordance with 11 U.S.C. § 727(a)(5) as the Debtor has failed to explain satisfactorily any loss of assets, namely the loss of the 2015 Toyota Tacoma. The Debtor's explanation that this estate asset was voluntarily turned over to Sperro, LLC, without a legitimate need for "transportation and storage services" and in order for Sperro, LLC to pay for his legal fees and costs is simply an unsatisfactory and unacceptable explanation for why the Debtor no longer has possession of the 2015 Toyota Tacoma.

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

ANSWER: Paragraph 23 is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 23 are neither admitted or denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.

24.  In light of these alleged facts and circumstances, NFCU submits that the debt owed to it in the amount of $50,343.84 should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), for willful and malicious injury to NFCU by the Debtor.  Contrary to the warranties made by the Debtor in the Note, Agreement and Disclosure, NFCU submits that the Debtor knowingly and willfully disposed of the collateral without the written consent of NFCU, knowingly and willfully permitted an action to impair the collateral's value to NFCU, knowingly and willfully permitted the attachment of a fraudulent mechanic's lien to the collateral, and knowingly and willfully subjected the 2015 Tacoma to a possible mechanic's lien sale by Sperro, LLC.

ANSWER: Paragraph 24 is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 24 are neither admitted or denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.

25.  As a result of the Debtor's voluntary and willful actions, NFCU has been damaged in the principal amount of $50,343.84, plus accruing finance charges and legal fees and cost.  NFCU has suffered an injury and monetary damages in that it can no longer obtain possession of its collateral in order to liquidate its value as bargained for in the Note, Agreement and Disclosure.

ANSWER: Neither admitted nor denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding the validity of this allegation.

26.  The Debtor's malice and reckless disregard for the injury sustained by NFCU can be inferred from the Debtor's voluntary and willful actions.  Namely, the Debtor willfully and intentionally entered into a fraudulent scheme with Sperro, LLC to transfer possession of NFCU's collateral to Sperro, LLC by signing the TSSA, ,and then subsequently willfully and voluntarily

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

transferred possession of the collateral to Sperro. The Debtor made this transfer with no intention of paying the fees and cost agreed to by him in the TSSA, ,and with no intention of recovering the Vehicle. Likewise, the Debtor made this voluntary transfer of NFCU's collateral in direct breach of the warranties and promises he made to NFCU through the Note, Disclosure and Security Agreement. As a result of the Debtor's willful and malicious behavior, NFCU has been damaged in the principal amount of $50,343.84, plus accruing finance charges and legal fees and costs, and such debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

**ANSWER: Paragraph 26 is a legal conclusion and requires no response. To the extent an answer is required, the allegations contained in Paragraph 26 are neither admitted or denied on the basis that Defendant does not have sufficient knowledge or information to form a conclusion regarding their validity.**

27. NFCU furhter requests that this Court aware it reasonable attorney's fees and costs incurred in connection with the filing of this Compaint.

**ANSWER: DENIED**

WHEREFORE, Defendant requests that this Honorable Court deny Plaintiff's requested relief and request that he be awarded attorney fees pursuant to 11 U.S.C. 523(d).

## AFFIRMATIVE DEFENSES

Defendant has undertaken in good faith to identify all of the special and/or affirmative defenses that he may have with respect to the Plaintiff's claims. Defendant reserves the right to reevaluate, restate, and/or delete any defenses and/or assert additional defenses as it deems appropriate.

1. Plaintiff fails to state a claim upon which relief may be granted.
2. Plaintiff's claims are barred in whole or in part by payment.
3. Plaintiff's claims are barred in whole or part by waiver and equitable estoppel.
4. Plaintiff's claims are barred in whole or in part by release, satisfaction, or fraud.
5. Plaintiff's conspiracy to commit fraud theory is not a core proceeding, and therefore this

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

Court lacks jurisdiction regarding that theory of recovery.

    6. Plaintiff's claims are barred in whole or in part by its failure to mitigate the damages.

    7. Plaintiff's claims are barred in whole or in part because no fiduciary relationship

sufficient to satisfy 28 U.S.C. 523(a)(4) existed between the parties.

    8. Defendant lacks the requisite actual intent to defraud.

    9. Defendant relied upon the advice of counsel.

    10. Defendant has a good faith justification for the TSAA.

    11. Defendant reserves the right to raise other defenses as discovery progresses.

BRETT BUD HALL

By: _____
    Edrie A. Pfeiffer, VSB#41791
    Counsel for Debtors

CERTIFICATE OF MAILING

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

I hereby certify that a true copy of the foregoing Answer will be electronically transmitted via ECF notification upon filing of the same with the Court to Anastasia P. Kezman, Esquire, Attorney for Plaintiff and Carolyn Camardo, Trustee, and was mailed to the U.S. Trustee at 200 Granby Street. Room 625, Norfolk, VA 23510 and Brett Hall, Debtor at 5009 Jeanne St, Virginia Beach, VA 23462, on this June 14, 2016.

Edrie A. Pfeiffer

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

Edrie A. Pfeiffer 41791
Hampton Roads Legal Services
372 S. Independence Blvd.
Suite 109
Virginia Beach, VA 23452
(757) 340-3100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

Attachment D

In re:

BRETT BUD HALL                                    Chapter 7

        Debtor.                                   Case No. 16-70486-SCS

NAVY FEDERAL CREDIT UNION,

        Plaintiff,                                APN: 16-07024

BRETT BUD HALL

        Defendant.

## CONSENT ORDER IN SETTLEMENT OF NFCU'S COMPLAINT OBJECTING TO THE DEBTOR'S DISCHARGE AND DISCHARGE-ABILITY OF THE DEBT

        This matter comes before the Court on the Complaint Objecting to the Debtor's

Discharge and the Discharge-ability of Debt surrounding the circumstances based the

Debtor's transfer of a 2015 Toyota Tacoma ("Vehicle") to Sperro, LLC, a towing company

located in Indianapolis, Indiana.

Anastasia Kezman, Esq.
VSB#33325
Deborah Kirkpatrick, P.C.
Post Office Box 10275
Virginia Beach, VA 23450-0275
Ph: (757) 343-3869; Fax: (757) 233-0275
Anastasiak10@cox.net
Counsel for Navy Federal Credit Union

The parties agree, and the Court makes the following finding of facts:

1.    Brett Bud Hall ("Debtor") filed a petition for bankruptcy relief on February 17, 2016.

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C.§§ 157 and 1334 and 11 U.S.C.§§ 727 and 523 and Federal Rule of Bankruptcy Procedure 7001.  This is a core proceeding within the meaning of 28 U.S.C.§157(b).

3.    Venue is proper pursuant to 28 U.S.C.§ 1409(a).

4.    NFCU is the holder of a Promissory Note, Security Agreement and Disclosure in the original amount of $53,186.49, secured by a lien on a 2015 Toyota Tacoma, VIN: 5TFUU4EN8FX133820 ("Vehicle").

5.    The Vehicle at all times since the origination of the Note has been fully encumbered by NFCU's lien.    Since the Debtor obtained possession of the Vehicle, there has never been any equity in the Vehicle for the benefit of the Debtor.

6.    Prior to filing of the instant bankruptcy petition, the Debtor defaulted on the Note.  As of the filing date, the payoff on the Note was $50,343.84 and the arrears were $1,821.56.

7.    On December 11, 2015, on the advice of counsel, the Debtor entered into and signed a Transporting and Storage Authorization Agreement ("TSSA") with Sperro, LLC, in exchange for Sperro, LLC's payment of Debtor's bankruptcy fees directly to Debtor's counsel.

8.    In December 2015, the Debtor transferred possession of the collateral to Sperro, LLC.

9.    In December, 2015, Sperro, LLC paid Hampton Roads Legal services $1,835.00.

10. At no time did the Debtor or Debtor's counsel contact NFCU and notify the lienholder that the Debtor no longer wanted possession of their collateral and request that they pick up the Vehicle.

11. Further, Sperro, LLC never contacted NFCU to notify them that Sperro, LLC had possession of their collateral, and in fact, NFCU did not learn that the collateral had been transferred to Sperro, LLC until the Chapter 7 Trustee informed them after the 341 meeting in March 2016. At the 341 meeting, the Chapter 7 Trustee abandoned the estate's interest in the collateral.

12. Upon learning this information, NFCU filed the instant complaint objecting to the Debtor's Discharge on the basis that the Debtor's actions of transferring the 2015 Toyota Tacoma to Sperro, LLC hindered and delayed NFCU in obtaining possession of their collateral.

13. In response to the complaint, the Debtor filed an Answer with an affirmative defense stating that he relied on the advice of counsel to make the transfer of the 2015 Toyota Tacoma to Sperro, LLC so that Sperro, LLC would pay for his legal fees and costs associated with the instant bankruptcy filing.

14. After months of searching for its collateral, Plaintiff's counsel was able to locate the collateral in the possession of the Indiana State Police. Plaintiff's counsel negotiated the release of NFCU's collateral for towing storage fees of $1,660.00 to Hix Towing in Indianapolis, Indiana. The Vehicle was picked up on July 11, 2016 from the Indiana State Police, where it had held after it had been seized from Sperro, LLC's lot on March 1, 2016 as part of a grand jury forfeiture subpoena against Sperro, LLC.

15. In addition to the storage and towing expense that would have to be paid to Hix Towing, Navy Federal Credit has expended considerable resources in legal fees and costs in pursuing the complaint and in locating and negotiating the release of their

Collateral.   For example, even though the stay had already terminated by operation of

other provisions of the Bankruptcy Code, the Marion County Prosecutors' Office still

required NFCU to file a motion for relief, obtain an order lifting the stay, and prepare a

notarized hold harmless letter, in order to gain possession of their collateral from the

Indiana State Police.

16.    Upon learning of Debtor's counsel action in this matter, the United States

Trustee filed a motion to Disgorge counsel's fees, as said fees were obtained in exchange

for Sperro, LLC acquisition of NFCU's collateral.

17.    Taking responsibility for the actions of the Debtor, Debtor's counsel has

agreed to reimburse Plaintiff for the storage expense of $1,660.00, as well as a portion of

Plaintiff's 's legal fees and costs, for a total of $4,000.00.  A portion of this amount shall

represent the improperly obtained fees that Debtor's counsel received from Sperro, LLC in

exchange for the conversion of NFCU's collateral.  Debtor's counsel will make a lump sum

payment by cashier's check to Navy Federal Credit Union, P.O. Box 3502, Merrifield VA

22119, and the cashier's check shall be sent to NFCU c/o Anastasia Kezman, Esq. P.O.

10275, Virginia Beach, VA 23450-0275.

18.    Upon receipt of these funds that solely represent expenses incurred by

NFCU to begin litigation of this complaint and to locate and secure its collateral, NFCU

agrees to dismiss this adversary complaint objecting to the Debtor's discharge and to the

discharge-ability of NFCU's debt.

19.    Finding that all parties are in agreement as evidenced by counsels'

endorsements below, and finding that this settlement is in the best interest of all the parties,

and for good cause shown, it is:

**ADJUDICATED AND ORDERED** that in settlement of NFCU's complaint,

Debtor's counsel shall make a lump sum payment by cashier's check to Navy Federal

Credit Union, P.O. Box 3502, Merrifield VA 22119, and the cashier's check shall be sent

to NFCU c/o Anastasia Kezman, Esq. P.O. 10275, Virginia Beach, VA 23450-0275.

**IT IS FURTHER** ORDERED that upon NFCU's receipt of the agreed payment,

Plaintiff's counsel will submit for entry an order dismissing this complaint, Adversary

Proceeding No. 16-07024.

**IT IS FURTHER ORDERED** that the Debtor has been advised of the terms of

this Order and is in full agreement and has a full understanding of these terms, as

evidenced by his counsel's signature below.

**IT IS** FURTHER **ORDERED** that a copy of this Order be transmitted to Anastasia

P. Kezman, Esq., P.O. Box 10275, Virginia Beach, VA 23450-0275; Edrie  Pfeiffer, 372 S.

Independence Blvd., Suite 109, Virginia Beach, VA 23452, to Kenneth N. Whitehurst, III,

Assistant United States Trustee, 200 Granby Street, Room 625, Norfolk, Virginia 23510,

Carolyn Camardo, 5101 Cleveland St. Suite 200, Virginia beach, VA 23462, and to the

Debtor, 1811 Craven Dr., Seffner, FL 33584.

**ENTER:** This day of _____.

/s/ Stephen C. St.John          Sep 15 2016
_____
Chief Judge Stephen C. St. John
United States Bankruptcy Court
Eastern District of Virginia

At:    Norfolk, Virginia

I ASK FOR THIS:

/s/ Anastasia P. Kezman_____          Entered on Docket:9/19/16
Anastasia P. Kezman, Esq., Counsel for
Navy Federal Credit Union

SEEN AND AGREED:

/s/ Edrie Pfeiffer_____
Edrie Pfeiffer, Esq. Debtor's counsel

SEEN AND NO OBJECTION:

/s/ Kenneth N. Whitehurst
Kenneth N. Whitehurst, III
Assistant United States Trustee

## CERTIFICATE OF ENDORSEMENT

I hereby certify that a true copy of the foregoing Order has been endorsed by all necessary parties as required by Rule 9022 who are as follows: Anastasia P. Kezman, Esq., Edrie Pfeiffer, Esq., and Kenneth Whitehurst, III, the Assistant United States Trustee.

/s/ Anastasia Kezman
Anastasia Kezman, Plaintiff's counsel

Anastasia Kezman, Esq.
VSB#33325
Deborah Kirkpatrick, P.C.
Post Office Box 10275
Virginia Beach, VA 23450-0275
Ph: (757) 343-3869; Fax: (757) 233-0275
Anastasiak10@cox.net
Counsel for Navy Federal Credit Union

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

Attachment E

In re:

    Brett Bud Hall
        Debtor.

Case No. 16-70486-SCS

Chapter 7

### CONSENT ORDER

This matter came before the Court upon the agreement of movant Judy A. Robbins,

United States Trustee for Region Four, and respondents Edrie A. Pfeiffer, Esq. and Garfinkel and

Pfeiffer, P.C., dba Hampton Roads Legal Services ("HRLS") in connection with the United

States Trustee's Motion to Examine the Debtor's Transactions with his Attorney ("Motion")

filed July 22, 2016. (Docket Entry 32). It appearing to the Court that:

    A.    Ms. Pfieffer is a partner with the HRLS firm.

    B.    Ms. Pfeiffer is counsel to the debtor.

    C.    Prior to filing his bankruptcy petition, the debtor owned three vehicles, including

a 2015 Toyota Tacoma (the "Vehicle").

    D.    The Vehicle was collateral for a debt owed to Navy Federal Credit Union.

("NFCU").

    E.    The value of the Vehicle on the petition date was significantly less than the

amount owed by the debtor to NFCU.

    F.    Prior to filing this case, the debtor sought advice from Ms. Pfeiffer about the

Vehicle and the debt to NFCU for which it served as collateral.

Kenneth N. Whitehurst, III, Esq., AUST, VSB No. 48919
Cecelia A. Weschler, Esq., VSB No. 28245
Nicholas S. Herron, Esq., NJSB No. 03007-2008, PASB No. 208988
Office of the United States Trustee
200 Granby Street, Room 625
Norfolk, VA 23510
(757) 441-6012

G.    Ms. Pfeiffer advised the debtor to transfer the Vehicle to Sperro, LLC ("Sperro"),
which would sell the vehicle, and use the proceeds to pay the debtor's bankruptcy filing fees, and
all fees due to HRLS for Ms. Pfeiffer's representation of the debtor in this bankruptcy case.

H.    The debtor, on the advice of Ms. Pfeiffer, entered into an agreement to transfer
the Vehicle to Sperro.

I.    As a result of the debtor's transfer, HRLS received $1,835 from Sperro.

J.    Of the $1,835 received, HRLS paid $335 to the Court for the debtor's filing fee.

K.    On May 12, 2016, NFCU filed a Complaint seeking denial of the debtor's
discharge under 11 U.S.C. §727 and a determination that the debt owed by the debtor to NFCU
was non-dischargeable, pursuant to 11 U.S.C. §523. *Navy Federal Credit Union v. Brett Bud
Hall*, APN: 16-07024. The Complaint was factually predicated upon the debtor's transfer of the
Vehicle to Sperro, LLC.

L.    On June 14, 2016, the debtor filed an Answer to NFCU's Complaint, asserting
numerous affirmative defenses, including his reliance on the advice of counsel.

M.    HRLS has paid $4,000 to Navy Federal Credit Union, in settlement of Adversary
Proceeding.

N.    Of the $4,000 paid to NFCU, $1500 represented the amount paid to HRLS by
Sperro, LLC, for her representation of the debtor in this bankruptcy case.

O.    The amount paid to HRLS for Ms. Pfeiffer's services in this case exceeds the
reasonable value of such services.

P.    Ms. Pfeiffer represents that she has not advised any debtors other than the debtor
in this case to transfer their vehicle to Sperro, LLC in exchange for the payment of her fees.

Q.    The parties have agreed to fully resolve the matters set forth in the Motion on the

terms described herein.

For these reasons, and good cause having been shown, the Court hereby ORDERS as follows:

1.    The Motion is GRANTED.

2.    All fee agreements between the debtor and HRLS are hereby cancelled, pursuant

to 11 U.S.C. §329(b).

3.    Having disgorged all fees paid for the representation of the debtor in this case,

Edrie A. Pfeiffer and HRLS shall receive no additional compensation for the representation of

the debtor in this case, from any source.

ENTER:

Entered on
Docket on____ 9/9/16.

United States Bankruptcy Judge

Seen and agreed:

/s/ Kenneth N. Whitehurst, III
Kenneth N. Whitehurst, III, Esq.
Assistant United States Trustee

/s/ Edrie A. Pfeiffer                              (By Mr. Whitehurst with permission from Ms. Pfeiffer
Edrie A. Pfeiffer, Esq.                            received by email on August 12, 2016)
Counsel for the debtor,
and for herself and
Garfinkel and Pfeiffer, P.C.
dba Hampton Roads Legal Services

### Local Rule 9022-1(C) Certification

The foregoing Order was endorsed by and/or served upon all necessary parties pursuant
to Local Rule 9022-1(C).

/s/Kenneth N. Whitehurst, III
Kenneth N. Whitehurst, III

NOTICE OF JUDGMENT OR ORDER
Entered on docket
        SEP    8 2016

**PARTIES TO RECEIVE COPIES:**

Brett Bud Hall
1811 Craven Drive
Seffner, FL 33584

Carolyn L. Camardo, Esq. (via email)

Edrie A. Pfeiffer, Esq. (via email)

Office of the U.S. Trustee (via email)

Case 16-00703-SCS    Doc 2    Filed 09/27/16    Entered 09/27/16 15:02:18    Desc Main
Case 16-70486-SCS    Doc 44 Document    Filed 09/12/16    Page 64 of 92    12/16 12:08:10    Desc Main
Document    Page 1 of 29

1

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF VIRGINIA (NORFOLK)
 2                                              Attachment F
     In Re:                      )  Case No. 16-70486-scs
 3                               )  Norfolk, Virginia
     BRETT BUD HALL,             )
 4                               )
            Debtor.              )  September 8, 2016
 5                               )  11:03 A.M.
     ------------------------------- )
 6

 7                     TRANSCRIPT OF HEARING ON
       [37] MOTION FOR APPROVAL OF SETTLEMENT OF NFCU'S COMPLAINT
 8   OBJECTING TO THE DEBTOR'S DISCHARGE AND TO THE DISCHARGEABILITY
       OF NFCU'S DEBT ON BEHALF OF NAVY FEDERAL CREDIT UNION.
 9    [32] U.S. TRUSTEE'S MOTION TO EXAMINE UNDER U.S.C. SECTION 329
                     AND MOTION TO DISGORGE.
10
               BEFORE THE HONORABLE STEPHEN C. ST. JOHN
11            CHIEF UNITED STATES BANKRUPTCY COURT
     APPEARANCES:
12   For the Debtor:              EDRIE A. PFEIFFER, ESQ.
                                  HAMPTON ROADS LEGAL SERVICES
13                                372 South Independence Boulevard
                                  Suite 109
14                                Virginia Beach, VA 23452

15   United States Department     KENNETH N. WHITEHURST, III, AUST
     of Justice:                  OFFICE OF THE UNITED STATES
16                                TRUSTEE
                                  200 Granby Street
17                                Suite 625
                                  Norfolk, VA 23510
18
     For Navy Federal Credit      ANASTASIA P. KEZMAN, ESQ.
19   Union:                       DEBORAH KIRKPATRICK, P.C.
                                  Post Office Box 10275
20                                Virginia Beach, VA 23450

21   Transcription Services:          eScribers, LLC
                                      700 West 192nd Street
22                                    Suite #607
                                      New York, NY 10040
23                                    (973) 406-2250
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
24
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE
25
```

Colloquy                                                                 2

1          THE CLERK:  Items number 62 and 63, Brett Hall.

2          THE COURT:  Good morning, Ms. Kezman.

3          MS. KEZMAN:  Good morning, Your Honor.  We're here

4    today on the motion of Navy Federal Credit Union to approve a

5    settlement with debtor and debtor's counsel.  The settlement is

6    to settle the -- Navy Federal filed a complaint under 727 and

7    523 objecting to the debtor's discharge as well as the

8    nondischargeability of the debt.

9          I want to ask you quick, do you want me to go through

10   all the details or just tell you that we have noticed all the

11   creditors and nobody has objected?  I have spoken with the U.S.

12   Trustee.  He is in favor of the settlement.

13         THE COURT:  Well, how about if we start with a

14   question.

15         MS. KEZMAN:  Sure.

16         THE COURT:  This settlement, when I read it, frankly

17   seemed to be awfully generous to the debtor and to Ms.

18   Pfeiffer.  I view what occurred here, at least to the extent

19   that it has been pled -- and of course, that's all know so far,

20   as being, frankly, being one of the most egregious things I've

21   seen in an awfully long time.  And one of the reasons why this

22   and the other motion are on today is I need to find out more

23   about this before I'm prepared to make any adjudication.

24         What happened, again, to me, seems facially -- and

25   again, only from the pleadings, that's all I'm aware of at this

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44 Document 09/12/1 Page 66 of 929/12/16 12:08:10   Desc Main
Document   Page 3 of 29

Colloquy                                                                        3

1  stage -- but it seems egregious.

2          MS. KEZMAN:  Your Honor, I would agree it was

3  egregious, absolutely, which was why we filed the complaint to

4  begin with.  And as facts developed, we -- as you saw from the

5  pleadings -- we did locate the vehicle.  It was extremely

6  difficult, but we did locate the vehicle.  Navy Federal does

7  have it in its possession now.  They were able to sell it.

8          The settlement -- we focused on, again, trying to

9  appease the U.S. Trustee as well -- we focused on we've got the

10 vehicle back; now we want to make Navy Federal as whole as

11 possible.  We didn't quite get there, and if the Court -- that

12 would be, in my opinion, a place where the Court could change

13 the amount of money that was paid to Navy Federal.  But again,

14 it comes down to litigation costs.

15         Navy Federal did get the vehicle back.  The debtor's

16 counsel did pay for the cost of getting -- paid Hix Towing,

17 which was the towing company in Chicago -- or in Indianapolis

18 that had the vehicle, paid a portion of our legal fees.  Navy

19 Federal still is out a portion of the legal fees to try this

20 matter.  But we were looking at the litigation.

21         And if you take into account that perhaps the debtor

22 was counseled improperly by debtor's counsel -- again, we

23 didn't get into that.  We'd have to get into litigation:  how

24 much did the debtor know?  How much was the debtor involved?

25 Did the debtor rely on debtor's counsel's advice?  Did he ask

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44 Document Filed 09/12/16   Entered 09/12/16 12:08:10   Desc Main
Document    Page 4 of 29

Colloquy                                                    4

1   the right questions to determine if he could rely on that

2   advice?  But then that becomes an issue of expense to Navy

3   Federal, and I'm not sure they were willing to pay for that,

4   since they got the vehicle back.

5            So again, we were trying -- my focus was on trying to

6   make Navy Federal whole.  I do agree that the situation was

7   egregious.

8            THE COURT:  Ms. Pfeiffer, I have to start with you,

9   much as my colleague Judge Santoro started when he was still

10  unanointed, asking one of his clients who'd done something

11  amazingly inappropriate:  what were you thinking?

12           MS. PFEIFFER:  Your Honor --

13           THE COURT:  How -- Ms. Kezman, let me just finish the

14  preface.

15           THE COURT:  Again, facially, this is one of the worst

16  things I think I have ever seen.  And I'm not just going to

17  limit it to twenty-one years on the bench.  I'm going to throw

18  in the first eighteen years when I was practicing.  What

19  possible legitimate purpose did this scheme serve?

20           MS. PFEIFFER:  Your Honor, this was a program that had

21  been in existence for quite some time before I --

22           THE COURT:  Well --

23           MS. PFEIFFER:  -- did --

24           THE COURT:  -- so is armed robbery.

25           MS. PFEIFFER:  Well --

Colloquy                                                                5

1           THE COURT:  But that doesn't mean it's -- that doesn't
2    mean it's acceptable.  I mean, what could you possibly have
3    thought was the legitimate purpose to be achieved by
4    counseling -- assuming you did -- your client to basically
5    cause the removal of collateral from the jurisdiction and --
6    what I don't understand, how is this different from if you had
7    advised the debtor here to take the car and hide it in the
8    woods and not tell Navy Federal Credit Union where it was until
9    your fees were paid?

10          I mean, to be blunt, it's -- and again, I'm not using
11   it in the federal criminal sense, although that may be for
12   someone else to decide whether it's applicable or not -- but it
13   seems like it's nothing short of just law extortion, and I
14   can't -- I've thought about this a lot.  I was so appalled when
15   I saw the pleadings to begin with.  I've spent hours and hours
16   thinking, and I cannot think of any possible legitimacy that
17   would surround this scheme, for lack of a better term.

18          And the fact that you got something in the mail from
19   somebody that said it was okay, I'm just -- it's unfathomable
20   to me.

21          MS. PFEIFFER:  Your Honor, I understand the Court's
22   concerns.  I became aware of this program that was out there
23   quite some time ago.  This company presented at the National
24   Association of Consumer Bankruptcy Attorneys Conference.  They
25   were there over -- not this last one -- but a year ago at it,

                                    Colloquy                                    6

1   and had been working with attorneys throughout the country on
2   this program.
3           I did an independent investigation before I ever did
4   it. I waited to see how this program worked. It was working
5   successfully throughout the country. The benefits to the
6   debtor were that they no longer had to worry about the vehicle,
7   that it was in a secure location.
8           The company had indicated originally that they
9   contacted the creditor as soon as they took possession of the
10  vehicle, and they would normally make arrangements to liquidate
11  the vehicle for them.
12          Unfortunately, the individual that was running this
13  company became, quite frankly, unscrupulous. And that's well
14  documented throughout the country, at the end of last year that
15  quite -- he did. He started not abiding by the law, not
16  notifying the creditors, as he was telling counsel that he was
17  doing, not doing any of the things that he was supposed to be
18  doing. He was supposed to be housing the vehicles locally and
19  then liquidating them on behalf of the creditors.
20          I talked to the individual myself. He said, I've
21  worked with Navy Federal on many cases. They almost always
22  choose to have us litigate -- or liquidate the vehicle on their
23  behalf and give them the profits.
24          I knew that this was working throughout the country
25  successfully in other cases. And then in December was when we

1    found out that he had changed his practices.  But
2    unfortunately, at that point, we had already entered into the
3    agreement with them.  There was no attempt to hide this
4    vehicle.  It was disclosed -- there was a change to the forms.
5    The old forms that we used up until December didn't have the
6    location of the vehicle.  I was not aware, before the forms
7    changed, that that changed.  And so there was that error on his
8    paperwork that indicated he had possession of the vehicle.

9           We certainly never intended to do that.  We disclosed
10   in the paperwork that this vehicle was transferred.  We
11   disclosed that they paid the fees.  We were trying to be as up-
12   board and up-front as I could in this disclosure with -- in
13   accordance with what the practices had been.

14          There were benefits to the debtor for it.  On my side
15   of the practice, one of the problems that debtors have is not
16   knowing when collateral is going to be taken, and it can create
17   a burden.  In my client's case, he did have a burden because he
18   couldn't afford this vehicle; he wasn't able to store it; and
19   so there was a benefit to him to have it securely maintained
20   for it.

21          I understand the Court's concerns.  This company did
22   turn out to be, unfortunately at the end of last year, 2015 and
23   into this -- the first part of this year.  And you know, the
24   guy's in jail --

25          THE COURT:  Well, let me interrupt you --

Colloquy                                                                                            8

1              MS. PFEIFFER:  -- for his actions.

2              THE COURT:  -- Ms. -- let me interrupt you.

3              As an officer of the court, would you have done

4    this -- would you have recommended this if it had not had the

5    result of having your fees paid?

6              MS. PFEIFFER:  That --

7              THE COURT:  I think the answer is no.  And that's part

8    of what makes this so wrong.  I cannot -- these excuses of I'm

9    going to tow somebody -- I'm going to tow a car from Virginia

10   to Indiana to help the secured creditor -- and I've got to say,

11   Ms. Kezman, if your client previously thought this was a good

12   idea, perhaps the federal banking regulatory authorities should

13   be notified.  And I'm quite serious about that.

14             That is -- isn't the only reason why this was done was

15   to try an extort the payment of your fees from a secured

16   creditor who has no obligation to do it?

17             MS. PFEIFFER:  Your Honor, no.  And to say that the

18   only -- I would only recommend this because they were paying

19   the fees, that was a benefit to the debtor, was that in

20   exchange for participating in this program his fees were paid.

21   But that is not the only reason.  There are other companies

22   that do this where they secure collateral for debtors.  They

23   don't pay the attorneys' fees.  They have legitimate operations

24   like this.  And to say that I would not have recommended this

25   if my attorneys' fees were not going to be paid -- my client

Colloquy 9

1  would have been paid the attorneys' fees.

2          I settled this with him and I paid this money

3  willingly out of it because I didn't want my client to suffer

4  any harm for this.  He is young.  He's in the navy.  He's been

5  transferred.  He doesn't have the ability to defend this,

6  obviously.

7          I think that the -- they would have difficulty proving

8  that he had any actual fraud in this.  And that's why I settled

9  it for it.  Yes, it was done on my advice.  I made him aware of

10  the program.  I freely admitted to that.  I've cooperated at

11  every step that I could with trying to do whatever I could to

12  get this issue resolved.

13          But to say that I would not have recommended this

14  program as it was originally described to me, and as I

15  understood it to be working throughout the country, only if my

16  attorneys' fees would be paid, I don't think that is a fair

17  statement, Your Honor.  That was a benefit in it, but that was

18  not the intent of this program.  The intent was to --

19          THE COURT:  Well, what was the intent?  Why would it

20  ever be a good idea, without the consent of a secured creditor,

21  to move their collateral halfway across the country?

22          MS. PFEIFFER:  Your Honor, that was not the original

23  intent of the program.  The collateral was supposed to be

24  stored regionally within a local region for it.  Yes, Sperro

25  changed their practices and started transporting the collateral

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44 Document 12/1Page 7Entered 09/12/16 12:08:10   Desc Main
Document      Page 10 of 29

Colloquy                                                    10

1  long distances for it.  But as was originally printed, it was

2  that they had like little hubs that they presented that they

3  stored the collateral at and then worked with the companies on

4  a national basis to liquidate the collateral for them, so

5  that -- I guess is what I understood it was that they kind of

6  acted as a voluntary repossession agent in working with the

7  companies.

8          Now, I understand that's not what happened.  But that

9  was kind of what my understanding was, was that it was -- that

10  they worked with these national credit unions and companies --

11  other companies, finance companies, to take possession of the

12  vehicle in a voluntary manner, to move it to a secure location

13  until the vehicle could be either liquidated or turned over to

14  the creditor for it.  Just the same as if an agent hired by the

15  credit union had gone out and taken possession of the vehicle.

16  But it gave the debtor the certainty of when this vehicle was

17  going to be taken and that it was going to be stored in a

18  secure location, and that the debtor didn't have to be worried

19  about something happening to the vehicle until the creditor

20  took possession.

21          That was my understanding of it, that it was not

22  anything that was to try and circumvent the creditor's rights

23  or anything along that line.  And I would never participate in

24  something that I thought was going to try and screw a creditor

25  out of something other than voluntary repossession.

 1           MS. KEZMAN:  Can I say something, Your Honor, on

 2   behalf of --

 3           THE COURT:  You may.

 4           MS. KEZMAN:  -- Navy Federal?  The biggest problem in

 5   this situation with respect to Navy Federal is there was no

 6   notice.  And she keeps saying that the -- or debtor's counsel

 7   keeps alluding to the fact that the debtor was -- that Sperro

 8   picked up the vehicle to put it in a safe location.  And the

 9   normal practice is, if the debtor doesn't want the car, you

10   call up Navy Federal and Navy Federal will come pick up the

11   vehicle.  That's what should have happened.  This vehicle was

12   way oversecured, so there was never going to be any money to

13   pay debtor's counsel.

14           So I can't speak to what Sperro's practices were years

15   ago, but in this particular situation, Navy Federal would not

16   have agreed to such a situation, because that's not their

17   normal practice.  And for her to say that that was acceptable

18   to them, you're in a little bit of a different situation.  This

19   did happen to Navy Federal in several cases in different areas,

20   but you're almost held hostage once they have your vehicle.

21           So to say that Navy Federal agreed is not really an

22   accurate statement.  This particular car we got lucky, I hate

23   to say it, because it got caught up in a grand jury subpoena

24   and it was preserved with Indiana State Police.  Had that not

25   happened, that car would have been sold, and we wouldn't have

1   had anything.

2            So in a sense, we were a little bit fortunate that

3   Sperro got caught.  But I just wanted to make sure that the

4   Court was aware that Navy Federal would not agree to such a

5   situation.  Their normal practice is to come pick -- they're

6   happy to come pick up a car in a situation like this.

7            THE COURT:  I absolutely cannot even imagine how this

8   process, even as originally conceived, if it was different, has

9   any legitimacy.  It seems like it is nothing more than

10   extortion to me.

11            MS. KEZMAN:  I agree, Your Honor.

12            THE COURT:  All right, Mr. Whitehurst, on your motion?

13            MR. WHITEHURST:  Your Honor, Ken Whitehurst for the

14   United States Trustee, who completely agrees with the Court

15   about the conception of this scheme, I think is the right word

16   for it, frankly, Your Honor.  There is no -- in the view of the

17   United States Trustee, there is no way this plan, even as

18   conceived, could have been lawful, because it contemplates

19   specifically taking a vehicle -- in this case worth about

20   20,000 dollars, subject to a lien worth about 40,000 dollars,

21   and then somehow mounting more fees on top of that, and yet

22   benefiting it to the tune of 3- or 4,000 dollars, back to

23   debtor's counsel.

24            The United States Trustee has filed a suit -- and of

25   course it hasn't been decided -- but it has filed a suit

1   against Sperro LLC as well as the Allen Chern Group (ph.) and

2   Upright Law in Roanoke, Virginia.  Ms. Robinson's filed a suit

3   there, because this matter's come up in several cases there,

4   and has laid out all of the concerns that she has against that

5   entity in those proceedings.

6        And so in this proceeding, also, we know that the

7   Sperro towing company was raided by several federal agencies

8   and Indiana State Police, I believe, earlier this year.  So we

9   know that this isn't going to be a problem at least with this

10  company -- I mean, maybe someone else will think of this crazy

11  idea.  But as far as we know, this isn't going to keep

12  happening.

13       Ms. Pfeiffer has represented to me that this is the

14  only case in which she's advised someone to do this.  We're not

15  aware of any other ones.  I have no reason to doubt her about

16  that.  And so the United States Trustee filed her motion, and

17  then when she learned that Navy Federal had reached the

18  resolution it had reached, agreed that that was a reasonable

19  result, given that Ms. Pfeiffer has come out-of-pocket far more

20  than she received in this case, or at least double what she

21  received in this case, and that all the United States Trustee

22  had requested in this case was disgorgement.  And so that's

23  more than we had requested.  And under the circumstances --

24       THE COURT:  Well, but you did request disgorgement for

25  the benefit of the creditors and the estate.  The fact that all

1 | of these proceeds, if this settlement is approved, go to Navy
2 | Federal, does that alter whether I should approve the
3 | withdrawal of your motion?

4 | MR. WHITEHURST: Well, Your Honor, my understanding --
5 | and I've spoken with the Chapter 7 trustee in this case -- is
6 | that this involves a car, as I said, that was completely
7 | underwater, and that the Chapter 7 estate abandoned it,
8 | effectively, because it had no interest in it. So that the
9 | loss here really is -- at the time I drafted it, I said we had
10 | took no position on it because we didn't know -- as far as I
11 | understand, as far as all the parties in the case with an
12 | actual pecuniary interest in the result have agreed that Navy
13 | Federal is the one who was actually harmed here, because it was
14 | their -- it was car on which they had a lien, and so they were
15 | the ones who ultimately had to try to recover it.

16 | The Chapter 7 trustee, I don't believe she would here,
17 | because this was an asset she had abandoned. So it wasn't an
18 | issue for the Chapter 7 estate in that sense, unless the Court
19 | believe that there was some harm to the Chapter 7 estate
20 | through this that I haven't thought of. I certainly accept the
21 | Court's criticism, if that's the case. But that was my
22 | understanding of the situation, that because this involved a
23 | car that really was between the debtor and Navy Federal at this
24 | point in the proceedings, Navy Federal really is the proper
25 | recipient of the money.

Case 16-00703-SCS    Doc 2    Filed 09/27/16    Entered 09/27/16 15:02:18    Desc Main
Case 16-70486-SCS    Doc 44    Document    Filed 09/12/16    Page 78 of 92    Entered 09/12/16 12:08:10    Desc Main
Document    Page 15 of 29

Colloquy    15

1    THE COURT:  All right, sir.

2    MR. WHITEHURST:  And I will add, Your Honor, of

3 course, if the Court's concerned, as I believe began this

4 hearing, with which -- with the statement that this is too

5 generous, the U.S. Trustee completely agrees with you and would

6 remind the Court, of course, that there are other -- there are

7 other remedies that, of course, aren't before the Court this

8 morning.

9    THE COURT:  Well, are you going to pursue them?

10    MR. WHITEHURST:  Well, Your Honor, some of those

11 remedies, I can't comment on.  Some of those remedies involve a

12 recommendation to the State Bar that this matter be

13 investigated, and I've already started drafting that

14 recommendation, because I think the State Bar does need to take

15 a look at this, personally.  I mean, I have that duty as an

16 attorney, much less as the Assistant United States Trustee.

17 And I've begun drafting that.

18    That's a shame, I think.  But I do think that this

19 rises to that level of concern, because I can't understand, for

20 the life of me, how anyone would think that this is good

21 advice, and that the advice in this case led directly to the

22 debtor being the recipient of a 727 nondischargeability

23 complaint, which on its face is valid.  Although we agree that

24 that matter -- because I believe the next question Your Honor

25 should ask --

1              THE COURT:  Excuse me.

2              MR. WHITEHURST:  -- me is of course, does the U.S.

3    Trustee accept the dismissal of the 727 case on these terms.

4    And she does, because I've spoken with Ms. Pfeiffer about this

5    matter, and I'm convinced that the debtor did this because he

6    was advised to by his attorney.  And while there is case law

7    that suggests that he still has responsibility for what he's

8    done -- and I think he does -- he is, I think, a Marine, and

9    he's been retransferred to Florida, and he clearly didn't care

10   about the car, because he knew it was underwater, and his

11   lawyer told him it was a good deal.  And the U.S. Trustee

12   doesn't want to proceed on a 727 case on those facts.

13             And so we would -- we would ask the Court to approve

14   the settlement as drafted, including the consent order that

15   I've submitted to the Court.  I brought a copy of it.  It

16   hasn't been entered, but we did electronically submit a consent

17   order in the matter that the U.S. Trustee has filed as well, if

18   you'd like me to hand that up?  It's the same one that we

19   submitted electronically.

20             THE COURT:  All right, thank you, sir.

21             All right.  Anything further from anyone?

22             MS. PFEIFFER:  Your Honor, I just would like to say,

23   I've practiced before this court for almost twenty years, all

24   of it during Your Honor's tenure before this Court.  I've never

25   ever been accused of anything unethical.  And I never -- I

1   don't know how many times I've told clients that my bar license
2   is not worth your disclosure or anything.  I thought that this
3   program -- and after the research and investigation I'd done on
4   it, I thought that it did comply with all aspects of the law.

5           Yes, it was something that was extremely different
6   than anything that had been done before, but everything that I
7   showed, showed it had been used successfully for quite some
8   time throughout the country before I ever even attempted to get
9   involved with this.

10          And unfortunately, the individual that was running
11  this, he turned out to be quite a con artist, and there's -- I
12  know -- he's under criminal indictment now for it.  I would
13  never have gone into this program if I were aware of the
14  sight -- the facts that came out after we'd already committed
15  to it.  But I was -- I was very, very cautious in going into
16  this, and I really did step back for almost eighteen months
17  after I became aware of this program being out there, to see
18  how it was being handled.  And all indications, at that point,
19  were that this was being used well throughout the country and
20  it was meeting all of the ethical requirements for it.

21          I would never have gone into anything that I thought
22  was in the least way unethical.  And I know the Court has a
23  different view of it at this point.  I just -- I can't --

24          THE COURT:  That is an understatement, Ms. Pfeiffer.

25          MS. PFEIFFER:  Yeah.

1          THE COURT: That is an understatement. I don't --
2    well, I'm not going to say any more, because the Court
3    obviously will give due consideration to whether it will
4    exercise its duties with respect to the termination of fitness
5    to remain an attorney among the bar of this court.

6          MS. KEZMAN: Your Honor --

7          THE COURT: Yes.

8          MS. KEZMAN: -- can I say one more thing before you
9    rule? My only thing, when you -- again, I bring up that you
10   said you thought the settlement was too lenient.

11         In terms of Navy Federal, the only -- if the Court
12   wanted to, we could resubmit the motion and put in all the fees
13   that -- the legal fees that Navy Federal has paid us, and that
14   would perhaps make them completely whole. And I'm not -- I
15   would think that debtor's counsel would be agreeable to that.

16         THE COURT: Well, I'm not in a position to renegotiate
17   your deal. I either have to approve it or not. So I don't
18   think it's appropriate to, again, to become your mediator. I'm
19   the judge in the case. I'm not your mediator. If you and Ms.
20   Pfeiffer want to change your deal, that's all I can say. I'm
21   not in a position to negotiate. My role is to either accept or
22   reject the settlement, and that's all I can and will do. So --

23         But I will say this, Ms. Pfeiffer. Whatever you pay
24   or not in this case is not going to change one iota what the
25   Court will decide to do or not do as far as the exercise of its

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44   Document Page 82 of 92 12/16 12:08:10   Desc Main
Document   Page 19 of 29

Colloquy                                                                           19

 1 │ duties.  So don't think you're going to buy peace with the
 2 │ Court, whatever you do.  I have an independent and very solemn
 3 │ responsibility on that.  And again, I'm not going to -- if you
 4 │ up the ante with Navy Federal, it is not influential on what I
 5 │ ultimately decide to do in the exercise of my duties.  So it's
 6 │ up to you.

 7 │         But I just -- I don't want you to think if you pay
 8 │ more money to Navy Federal, you're finished, because you may
 9 │ be, you may not be.  But it's not going to be influenced at all
10 │ by whether you decide to change this agreement.  As a matter of
11 │ fact, this agreement is of little moment in my ultimate
12 │ decision as to what to do with this, and again, in the exercise
13 │ of my responsibilities.  So --

14 │         MS. PFEIFFER:  I understand, Your Honor.  I have taken
15 │ every effort I can to make sure that my client did not suffer
16 │ anything for this participation in this program, and I continue
17 │ to do that.  I negotiated this agreement in good faith with
18 │ Navy Federal.  This was, I believed, a hands-off agreement as
19 │ to settlement of the terms of it, and that's why we're here
20 │ today.

21 │         I understand if Your Honor has other concerns, and I
22 │ will be happy to cooperate with anything that this Court or the
23 │ Bar requires of me on this.  As I said, I have tried -- I tried
24 │ to make sure that everything was being done in an ethical
25 │ manner.  Unfortunately, it turned out the person that we were

 1  dealing with was not.  But I -- you know, I don't know what

 2  else I can say to this Court other than I have cooperated fully

 3  with the U.S. Trustee on this.  I've cooperated with Navy

 4  Federal on this, and I will continue to do so.

 5           THE COURT:  All right.  Anything further from anyone?

 6           All right.  I will reluctantly grant the motion for

 7  settlement.  While I think it is perhaps the minimum that I

 8  would approve, given the nature of the proceeding, the concerns

 9  that whether or not the impact of what occurred should fall so

10  heavily on the shoulders of the debtor, and given, frankly, the

11  willingness of Navy Federal to accept the proffered amount as

12  responsive to their losses, again, I will reluctantly approve

13  it.

14           I will -- let me ask you, Mr. Whitehurst:  exactly how

15  did your proposed order elect to dispose of your motion?  Was

16  it dismissal?

17           MR. WHITEHURST:  No, actually, Your Honor.  If I could

18  hand up -- I have copies for the Court.

19           THE COURT:  All right.  So would you hand it to the

20  Marshal?

21           MR. WHITEHURST:  Your Honor, we actually went through

22  and agreed upon a number of facts necessary for the Court to

23  reach the conclusion that the motion should be granted,

24  including findings that basically all of the things we alleged

25  that were relevant to the concerns the Court have --

Colloquy                                                                21

1          THE COURT:  All right.

2          MR. WHITEHURST:  -- are true, and that the fee

3   agreements are then canceled, and having disgorged the fees

4   paid, Ms. Pfeiffer and HRLS, which is her firm, shall receive

5   no additional compensation from the debtor in this case or from

6   any source on behalf of the debtor.

7          THE COURT:  All right.  Ms. Pfeiffer, this order bears

8   your endorsement.  Does this remain your desire to urge the

9   Court to enter this order?

10          MS. PFEIFFER:  Yes, Your Honor.

11          THE COURT:  All right.  I will so do.

12          MR. WHITEHURST:  Thank you, Your Honor.

13          THE COURT:  All right, thank you all.

14          IN UNISON:  Thank you, Your Honor.

15      (Whereupon these proceedings were concluded at 11:33 A.M.)

16

17

18

19

20

21

22

23

24

25

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44   Filed 09/12/16   Entered 09/12/16 12:08:10   Desc Main
Document    Page 22 of 29

22

1                                          **I N D E X**

2

3

4   **RULINGS:**                                                  **PAGE   LINE**

5   Motion to approve settlement is granted.       20     5

6   U.S. Trustee's motion to disgorge fees       21     11
  is granted.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44   Document 09/12/16   Page 86 of 92 09/12/16 12:08:10   Desc Main
Document      Page 23 of 29

23

1                    C E R T I F I C A T I O N

2

3            I, Penina Wolicki, the court approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the proceedings

6    in the above-entitled matter.

7

8

9    _Penina Wolicki_

10                                   September 11, 2016

11   _____    _____

12   PENINA WOLICKI                              DATE

13   AAERT Certified Electronic Transcriber CET**D-569

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC  |  (973) 406-2250
operations@escribers.net  |  www.escribers.net

BRETT BUD HALL

Case No. 16-70486-scs

September 8, 2016

## A

abandoned (2)
14:7,17
abiding (1)
6:15
ability (1)
9:5
able (2)
3:7;7:18
absolutely (2)
3:3;12:7
accept (4)
14:20;16:3;18:21;
20:11
acceptable (2)
5:2;11:17
accordance (1)
7:13
account (1)
3:21
accurate (1)
11:22
accused (1)
16:25
achieved (1)
5:3
across (1)
9:21
acted (1)
10:6
actions (1)
8:1
actual (2)
9:8;14:12
actually (3)
14:13;20:17,21
add (1)
15:2
additional (1)
21:5
adjudication (1)
2:23
admitted (1)
9:10
advice (5)
3:25;4:2;9:9;
15:21,21
advised (3)
5:7;13:14;16:6
afford (1)
7:18
again (13)
2:24,25;3:8,13,22;
4:5,15,15;10:18;9,18;
19:3,12;20:12
against (2)
13:1,4
agencies (1)
13:7
agent (2)
10:6,14

ago (3)
5:23,25;11:15
agree (5)
3:2;4:6;12:4,11;
15:23
agreeable (1)
18:15
agreed (5)
11:16,21;13:18;
14:12;20:22
agreement (5)
7:3;19:10,11,17,18
agreements (1)
21:3
agrees (2)
12:14;15:5
alleged (1)
20:24
Allen (1)
13:1
alluding (1)
11:7
almost (4)
6:21;11:20;16:23;
17:16
along (1)
10:23
alter (1)
14:2
although (2)
5:11;15:23
always (1)
6:21
amazingly (1)
4:11
among (1)
18:5
amount (2)
3:13;20:11
ante (1)
19:4
appalled (1)
5:14
appease (1)
3:9
applicable (1)
5:12
appropriate (1)
18:18
approve (6)
2:4;14:2;16:13;
18:17;20:8,12
approved (1)
14:1
areas (1)
11:19
armed (1)
4:24
arrangements (1)
6:10
artist (1)
17:11
aspects (1)

17:4
asset (1)
14:17
Assistant (1)
15:16
Association (1)
5:24
assuming (1)
5:4
attempt (1)
7:3
attempted (1)
17:8
attorney (3)
15:16;16:6;18:5
Attorneys (2)
5:24;6:1
attorneys' (4)
8:23,25;9:1,16
authorities (1)
8:12
aware (8)
2:25;5:22;7:6;9:9;
12:4;13:15;17:13,17
awfully (2)
2:17,21

## B

back (5)
3:10,15;4:4;12:22;
17:16
banking (1)
8:12
Bankruptcy (1)
5:24
Bar (5)
15:12,14;17:1;
18:5;19:23
basically (1)
5:4;20:24
basis (1)
10:4
bears (1)
21:7
became (3)
5:22;6:13;17:17
become (1)
18:18
becomes (1)
4:2
began (1)
15:3
begin (2)
3:4;5:15
begun (1)
15:17
behalf (4)
6:19,23;11:2;21:6
bench (1)
4:17
benefit (4)
7:19;8:19;9:17;

13:25
benefiting (1)
12:22
benefits (2)
6:5;7:14
better (1)
5:17
biggest (1)
11:4
bit (2)
11:18;12:2
blunt (1)
5:10
board (1)
7:12
Brett (1)
2:1
bring (1)
18:9
brought (1)
16:15
burden (2)
7:17,17
buy (1)
19:1

## C

call (1)
11:10
came (1)
17:14
can (7)
7:16;11:1;18:8,20,
22;19:15;20:2
canceled (1)
21:3
car (10)
5:7;8:9;11:9,22,
25;12:6;14:6,14,23;
16:10
care (1)
16:9
case (16)
7:17;12:19;13:14,
20,21,22;14:5,11,21;
15:21;16:3,6,12;
18:19,24;21:5
cases (4)
6:21,25;11:19;
13:3
caught (2)
11:23;12:3
cause (1)
5:5
cautious (1)
17:15
certainly (2)
7:9;14:20
certainty (1)
10:16
change (5)
3:12;7:4;18:20,24;

19:10
changed (4)
7:1,7,7;9:25
Chapter (5)
14:5,7,16,18,19
Chern (1)
13:1
Chicago (1)
3:17
choose (1)
6:22
circumstances (1)
13:23
circumvent (1)
10:22
clearly (1)
16:9
CLERK (1)
2:1
client (5)
5:4;8:11,25;9:3;
19:15
clients (2)
4:10;17:1
client's (1)
7:17
collateral (8)
5:5;7:16;8:22;
9:21,23,25;10:3,4
colleague (1)
4:9
comment (1)
15:11
committed (1)
17:14
companies (6)
8:21;10:3,7,10,11,
11
company (7)
3:17;5:23;6:8,13;
7:21;13:7,10
compensation (1)
21:5
complaint (3)
2:6;3:3;15:23
completely (4)
12:14;14:6;15:5;
18:14
comply (1)
17:4
con (1)
17:11
conceived (1)
12:8,18
conception (1)
12:15
concern (1)
15:19
concerned (1)
15:3
concerns (6)
5:22;7:21;13:4;
19:21;20:8,25

Case 16-00703-SCS    Doc 2    Filed 09/27/16    Entered 09/27/16 15:02:18    Desc Main
Case 16-70486-SCS    Doc 44 Filed 12/12/16 Entered 12/12/16 12:08:10    Desc Main
Document    Page 25 of 29

BRETT BOB HALL
Case No. 16-70486-scs
September 8, 2016

concluded (1)
21:15
conclusion (1)
20:23
Conference (1)
5:24
consent (3)
9:20;16:14,16
consideration (1)
18:3
Consumer (1)
5:24
contacted (1)
6:9
contemplates (1)
12:18
continue (2)
19:16;20:4
convinced (1)
16:5
cooperate (1)
19:22
cooperated (3)
9:10;20:2,3
copies (1)
20:18
copy (1)
16:15
cost (1)
3:16
costs (1)
3:14
counsel (8)
2:5;3:16,22;6:16;
11:6,13;12:23;18:15
counseled (1)
3:22
counseling (1)
5:4
counsel's (1)
3:25
country (8)
6:1,5,14,24;9:15,
21;17:8,19
course (6)
2:19;12:25;15:3,6,
7;16:2
COURT (55)
2:2,13,16;3:11,12;
4:8,13,15,22,24;5:1;
7:25;8:2,3,7;9:19;
11:3;12:4,7,12,14;
13:24;14:18;15:1,6,
7,9;16:1,13,15,20,23,
24;17:22,24;18:1,2,
5,7,11,16,25;19:2,
22;20:2,5,18,19,22,
25;21:1,7,9,11,13
Court's (4)
5:21;7:21;14:21;
15:3
crazy (1)
13:10

create (1)
7:16
Credit (4)
2:4;5:8;10:10,15
creditor (7)
6:9;8:10,16;9:20;
10:14,19,24
creditors (4)
2:11;6:16,19;
13:25
creditor's (1)
10:22
criminal (2)
5:11;17:12
criticism (1)
14:21

D

deal (3)
16:11;18:17,20
dealing (1)
20:1
debt (1)
2:8
debtor (20)
2:5,17;3:21,24,24,
25;5:7;6:6;7:14;
8:19;10:16,18;11:7,
9;14:23;15:22;16:5;
20:10;21:5,6
debtors (2)
7:15;8:22
debtor's (9)
2:5,7;3:15,22,25;
11:6,13;12:23;18:15
December (2)
6:25;7:5
decide (4)
5:12;18:25;19:5,
10
decided (1)
12:25
decision (1)
19:12
defend (1)
9:5
described (1)
9:14
desire (1)
21:8
details (1)
2:10
determine (1)
4:1
developed (1)
3:4
different (6)
5:6;11:18,19;12:8;
17:5,23
difficult (1)
3:6
difficulty (1)

9:7
directly (1)
15:21
discharge (1)
2:7
disclosed (3)
7:4,9,11
disclosure (2)
7:12;17:2
disgorged (1)
21:3
disgorgement (2)
13:22,24
dismissal (2)
16:3;20:16
dispose (1)
20:15
distances (1)
10:1
documented (1)
6:14
dollars (3)
12:20,20,22
done (8)
4:10;8:3,14;9:9;
16:8;17:3,6;19:24
double (1)
13:20
doubt (1)
13:15
down (1)
3:14
drafted (2)
14:9;16:14
drafting (2)
15:13,17
due (1)
18:3
during (1)
16:24
duties (3)
18:4;19:1,5
duty (1)
15:15

E

earlier (1)
13:8
effectively (1)
14:8
effort (1)
19:15
egregious (4)
2:20;3:1,3;4:7
eighteen (2)
4:18;17:16
either (3)
10:13;18:17,21
elect (1)
20:15
electronically (2)
16:16,19

else (3)
5:12;13:10;20:2
end (2)
6:14;7:22
endorsement (1)
21:8
enter (1)
21:9
entered (2)
7:2;16:16
entity (1)
13:5
error (1)
7:7
estate (4)
13:25;14:7,18,19
ethical (2)
17:20;19:24
even (4)
12:7,8,17;17:8
exactly (1)
20:14
exchange (1)
8:20
Excuse (1)
16:1
excuses (1)
8:8
exercise (4)
18:4,25;19:5,12
existence (1)
4:21
expense (1)
4:2
extent (1)
2:18
extort (1)
8:15
extortion (2)
5:13;12:10
extremely (2)
3:5;17:5

F

face (1)
15:23
facially (2)
2:24;4:15
fact (4)
5:18;11:7;13:25;
19:11
facts (4)
3:4;16:12;17:14;
20:22
fair (1)
9:16
faith (1)
19:17
fall (1)
20:9
far (6)
2:19;13:11,19;

14:10,11;18:25
favor (1)
2:12
Federal (34)
2:4,6;3:6,10,13,15,
19;4:3,6;5:8,11;
6:21;8:12;11:4,5,10,
10,15,19,21;12:4;
13:7,17;14:2,13,23,
24;18:11,13;19:4,8,
18;20:4,11
fee (1)
21:2
fees (16)
3:18,19;5:9;7:11;
8:5,15,19,20,23,25;
9:1,16;12:21;18:12,
13;21:3
filed (7)
2:6;3:3;12:24,25;
13:2,16;16:17
finance (1)
10:11
find (1)
2:22
findings (1)
20:24
finish (1)
4:13
finished (1)
19:8
firm (1)
21:4
first (2)
4:18;7:23
fitness (1)
18:4
Florida (1)
16:9
focus (1)
4:5
focused (2)
3:8,9
forms (3)
7:4,5,6
fortunate (1)
12:2
found (1)
7:1
frankly (5)
2:16,20;6:13;
12:16;20:10
fraud (1)
9:8
freely (1)
9:10
fully (1)
20:2
further (2)
16:21;20:5

G

BRETT BUD HALL
Case No. 16-70486-scs

September 8, 2016

gave (1)
  10:16
generous (2)
  2:17;15:5
given (3)
  13:19;20:8,10
Good (7)
  2:2,3;8:11;9:20;
  15:20;16:11;19:17
grand (1)
  11:23
grant (1)
  20:6
granted (1)
  20:23
Group (1)
  13:1
guess (1)
  10:5
guy's (1)
  7:24

## H

halfway (1)
  9:21
Hall (1)
  2:1
hand (3)
  16:18;20:18,19
handled (1)
  17:18
hands-off (1)
  19:18
happen (1)
  11:19
happened (4)
  2:24;10:8;11:11,
  25
happening (2)
  10:19;13:12
happy (2)
  12:6;19:22
harm (2)
  9:4;14:19
harmed (1)
  14:13
hate (1)
  11:22
hearing (1)
  15:4
heavily (1)
  20:10
held (1)
  11:20
help (1)
  8:10
hide (2)
  5:7;7:3
hired (1)
  10:14
Hix (1)
  3:16

Honor (25)
  2:3;3:2;4:12,20;
  5:21;8:17;9:17,22;
  11:1;12:11,13,16;
  14:4;15:2,10,24;
  16:22;18:6;19:14,
  21;20:17,21;21:10,
  12,14
Honor's (1)
  16:24
hostage (1)
  11:20
hours (2)
  5:15,15
housing (1)
  6:18
HRLS (1)
  21:4
hubs (1)
  10:2

## I

idea (3)
  8:12;9:20;13:11
imagine (1)
  12:7
impact (1)
  20:9
improperly (1)
  3:22
inappropriate (1)
  4:11
including (2)
  16:14;20:24
independent (2)
  6:3;19:2
Indiana (3)
  8:10;11:24;13:8
Indianapolis (1)
  3:17
indicated (2)
  6:8;7:8
indications (1)
  17:18
indictment (1)
  17:12
individual (3)
  6:12,20;17:10
influenced (1)
  19:9
influential (1)
  19:4
intended (1)
  7:9
intent (4)
  9:18,18,19,23
interest (2)
  14:8,12
interrupt (2)
  7:25;8:2
into (8)
  3:21,23,23;7:2,23;

17:13,15,21
investigated (1)
  15:13
investigation (2)
  6:3;17:3
involve (1)
  15:11
involved (3)
  3:24;14:22;17:9
involves (1)
  14:6
iota (1)
  18:24
issue (3)
  4:2;9:12;14:18
Items (1)
  2:1

## J

jail (1)
  7:24
Judge (2)
  4:9;18:19
jurisdiction (1)
  5:5
jury (1)
  11:23

## K

keep (1)
  13:11
keeps (2)
  11:6,7
Ken (1)
  12:13
Kezman (11)
  2:2,3,15;3:2;4:13;
  8:11;11:1,4;12:11;
  18:6,8
kind (2)
  10:5,9
knew (2)
  6:24;16:10
knowing (1)
  7:16

## L

lack (1)
  5:17
laid (1)
  13:4
last (3)
  5:25;6:14;7:22
law (5)
  5:13;6:15;13:2;
  16:6;17:4
lawful (1)
  12:18
lawyer (1)
  16:11

learned (1)
  13:17
least (4)
  2:18;13:9,20;
  17:22
led (1)
  15:21
legal (3)
  3:18,19;18:13
legitimacy (2)
  5:16;12:9
legitimate (3)
  4:19;5:3;8:23
lenient (1)
  18:10
less (1)
  15:16
level (1)
  15:19
license (1)
  17:1
lien (2)
  12:20;14:14
life (1)
  15:20
limit (1)
  4:17
line (1)
  10:23
liquidate (3)
  6:10,22;10:4
liquidated (1)
  10:13
liquidating (1)
  6:19
litigate (1)
  6:22
litigation (3)
  3:14,20,23
little (4)
  10:2;11:18;12:2;
  19:11
LLC (1)
  13:1
local (1)
  9:24
locally (1)
  6:18
locate (2)
  3:5,6
location (5)
  6:7;7:6;10:12,18;
  11:8
long (2)
  2:21;10:1
longer (1)
  6:6
look (1)
  15:15
looking (1)
  3:20
loss (1)
  14:9

losses (1)
  20:12
lot (1)
  5:14
lucky (1)
  11:22

## M

mail (1)
  5:18
maintained (1)
  7:19
makes (1)
  8:8
manner (2)
  10:12;19:25
many (2)
  6:21;17:1
Marine (1)
  16:8
Marshal (1)
  20:20
matter (6)
  3:20;15:12,24;
  16:5,17;19:10
matter's (1)
  13:3
may (4)
  5:11;11:3;19:8,9
maybe (1)
  13:10
mean (6)
  5:1,2,2,10;13:10;
  15:15
mediator (2)
  18:18,19
meeting (1)
  17:20
minimum (1)
  20:7
moment (1)
  19:11
money (5)
  3:13;9:2;11:12;
  14:25;19:8
months (1)
  17:16
more (8)
  2:22;12:9,21;
  13:19,23;18:2,8;19:8
morning (3)
  2:2,3;15:8
most (1)
  2:20
motion (9)
  2:4,22;12:12;
  13:16;14:3;18:12;
  20:6,15,23
mounting (1)
  12:21
move (2)
  9:21;10:12

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44   Document   Filed 09/12/16   Entered 09/12/16 12:08:10   Desc Main
BRETT BUD HALL
Document   Page 90 of 92
Page 27 of 29
Case No. 16-70486-scs
September 8, 2016

**much (4)**
3:24,24;4:9;15:16
**myself (1)**
6:20

**N**

**National (3)**
5:23;10:4,10
**nature (1)**
20:8
**Navy (32)**
2:4,6;3:6,10,13,15,
18;4:2,6;5:8,6:21;
9:4;11:4,5,10,10,15,
19,21;12:4;13:17;
14:1,12,23,24;18:11,
13;19:4,8,18;20:3,11
**necessary (1)**
20:22
**need (2)**
2:22;15:14
**negotiate (1)**
18:21
**negotiated (1)**
19:17
**next (1)**
15:24
**nobody (1)**
2:11
**nondischargeability (2)**
2:8;15:22
**normal (3)**
11:9,17;12:5
**normally (1)**
6:10
**notice (1)**
11:6
**noticed (1)**
2:10
**notified (1)**
8:13
**notifying (1)**
6:16
**number (2)**
2:1;20:22

**O**

**objected (1)**
2:11
**objecting (1)**
2:7
**obligation (1)**
8:16
**obviously (2)**
9:6;18:3
**occurred (1)**
2:18;20:9
**officer (1)**
8:3
**old (1)**
7:5

**once (1)**
11:20
**one (10)**
2:20,21;4:10,15;
5:25;7:15;14:13;
16:18;18:8,24
**ones (2)**
13:15;14:15
**only (9)**
2:25;8:14,18,18,
21;9:15;13:14;18:9,
11
**operations (1)**
8:23
**opinion (1)**
3:12
**order (5)**
16:14,17;20:15;
21:7,9
**original (1)**
9:22
**originally (4)**
6:8;9:14;10:1;12:8
**out (13)**
2:22;3:19;5:22;
7:1,22;9:3;10:15,25;
13:4;17:11,14,17;
19:25
**out-of-pocket (1)**
13:19
**over (2)**
5:25;10:13
**oversecured (1)**
11:12

**P**

**paid (13)**
3:13,16,18;5:9;
7:11;8:5,20,25;9:1,2,
16;18:13;21:4
**paperwork (2)**
7:8,10
**part (2)**
7:23;8:7
**participate (1)**
10:23
**participating (1)**
8:20
**participation (1)**
19:16
**particular (2)**
11:15,22
**parties (1)**
14:11
**pay (6)**
3:16;4:3;8:23;
11:13;18:23;19:7
**paying (1)**
8:18
**payment (1)**
8:15
**peace (1)**

**19:1**
**pecuniary (1)**
14:12
**perhaps (4)**
3:21;8:12;18:14;
20:7
**person (1)**
19:25
**personally (1)**
15:15
**Pfeiffer (23)**
2:18;4:8,12,20,23,
25;5:21;8:1,6,17;
9:22;13:13,19;16:4,
22;17:24,25;18:20,
23;19:14;21:4,7,10
**ph (1)**
13:1
**pick (3)**
11:10;12:5,6
**picked (1)**
11:8
**place (1)**
3:12
**plan (1)**
12:17
**pleadings (3)**
2:25;3:5;5:15
**pled (1)**
2:19
**point (4)**
7:2;14:24;17:18,
23
**Police (2)**
11:24;13:8
**portion (2)**
3:18,19
**position (3)**
14:10;18:16,21
**possession (6)**
3:7;6:9;7:8;10:11,
15,20
**possible (3)**
3:11;4:19;5:16
**possibly (1)**
5:2
**practice (4)**
7:15;11:9,17;12:5
**practiced (1)**
16:23
**practices (4)**
7:1,13;9:25;11:14
**practicing (1)**
4:18
**preface (1)**
4:14
**prepared (1)**
2:23
**presented (2)**
5:23;10:2
**preserved (1)**
11:24
**previously (1)**

**8:11**
**printed (1)**
10:1
**problem (2)**
11:4;13:9
**problems (1)**
7:15
**proceed (1)**
16:12
**proceeding (2)**
13:6;20:8
**proceedings (3)**
13:5;14:24;21:15
**proceeds (1)**
14:1
**process (1)**
12:8
**proffered (1)**
20:11
**profits (1)**
6:23
**program (13)**
4:20;5:22;6:2,4;
8:20;9:10,14,18,23;
17:3,13,17;19:16
**proper (1)**
14:24
**proposed (1)**
20:15
**proving (1)**
9:7
**purpose (2)**
4:19;5:3
**pursue (1)**
15:9
**put (2)**
11:8;18:12

**Q**

**quick (1)**
2:9
**quite (8)**
3:11;4:21;5:23;
6:13,15;8:13;17:7,11

**R**

**raided (1)**
13:7
**reach (1)**
20:23
**reached (2)**
13:17,18
**read (1)**
2:16
**really (5)**
11:21;14:9,23,24;
17:16
**reason (3)**
8:14,21;13:15
**reasonable (1)**
13:18

**reasons (1)**
2:21
**receive (1)**
21:4
**received (2)**
13:20,21
**recipient (2)**
14:25;15:22
**recommend (1)**
8:18
**recommendation (2)**
15:12,14
**recommended (3)**
8:4,24;9:13
**recover (1)**
14:15
**region (1)**
9:24
**regionally (1)**
9:24
**regulatory (1)**
8:12
**reject (1)**
18:22
**relevant (1)**
20:25
**reluctantly (2)**
20:6,12
**rely (1)**
3:25;4:1
**remain (2)**
18:5;21:8
**remedies (3)**
15:7,11,11
**remind (1)**
15:6
**removal (1)**
5:5
**renegotiate (1)**
18:16
**repossession (2)**
10:6,25
**represented (1)**
13:13
**request (1)**
13:24
**requested (2)**
13:22,23
**requirements (1)**
17:20
**requires (1)**
19:23
**research (1)**
17:3
**resolution (1)**
13:18
**resolved (1)**
9:12
**respect (2)**
11:5;18:4
**responsibilities (1)**
19:13
**responsibility (2)**

16:7;19:3
**responsive (1)**
  20:12
**resubmit (1)**
  18:12
**result (3)**
  8:5;13:19;14:12
**retransferred (1)**
  16:9
**right (13)**
  4:1;12:12,15;15:1;
  16:20,21;20:5,6,19;
  21:1,7,11,13
**rights (1)**
  10:22
**rises (1)**
  15:19
**Roanoke (1)**
  13:2
**robbery (1)**
  4:24
**Robinson's (1)**
  13:2
**role (1)**
  18:21
**rule (1)**
  18:9
**running (2)**
  6:12;17:10

**S**

**safe (1)**
  11:8
**same (2)**
  10:14;16:18
**Santoro (1)**
  4:9
**saw (2)**
  3:4;5:15
**saying (1)**
  11:6
**scheme (3)**
  4:19;5:17;12:15
**screw (1)**
  10:24
**secure (4)**
  6:7;8:22;10:12,18
**secured (3)**
  8:10,15;9:20
**securely (1)**
  7:19
**seemed (1)**
  2:17
**seems (4)**
  2:24;3:1;5:13;12:9
**sell (1)**
  3:7
**sense (3)**
  5:11;12:2;14:18
**serious (1)**
  8:13
**serve (1)**

4:19
**settle (1)**
  2:6
**settled (2)**
  9:2,8
**settlement (11)**
  2:5,5,12,16;3:8;
  14:1;16:14;18:10,
  22;19:19;20:7
**several (3)**
  11:19;13:3,7
**shall (1)**
  21:4
**shame (1)**
  15:18
**short (1)**
  5:13
**shoulders (1)**
  20:10
**showed (2)**
  17:7,7
**side (1)**
  7:14
**sight (1)**
  17:14
**situation (8)**
  4:6;11:5,15,16,18;
  12:5,6;14:22
**sold (1)**
  11:25
**solemn (1)**
  19:2
**somebody (2)**
  5:19;8:9
**somehow (1)**
  12:21
**someone (3)**
  5:12;13:10,14
**soon (1)**
  6:9
**source (1)**
  21:6
**speak (1)**
  11:14
**specifically (1)**
  12:19
**spent (1)**
  5:15
**Sperro (5)**
  9:24;11:7;12:3;
  13:1,7
**Sperro's (1)**
  11:14
**spoken (3)**
  2:11;14:5;16:4
**stage (1)**
  3:1
**start (2)**
  2:13;4:8
**started (4)**
  4:9;6:15;9:25;
  15:13
**State (4)**

11:24;13:8;15:12,
  14
**statement (3)**
  9:17;11:22;15:4
**States (6)**
  12:14,17,24;13:16,
  21;15:16
**step (2)**
  9:11;17:16
**still (3)**
  3:19;4:9;16:7
**store (1)**
  7:18
**stored (3)**
  9:24;10:3,17
**subject (1)**
  12:20
**submit (1)**
  16:16
**submitted (2)**
  16:15,19
**subpoena (1)**
  11:23
**successfully (3)**
  6:5,25;17:7
**suffer (2)**
  9:3;19:15
**suggests (1)**
  16:7
**suit (3)**
  12:24,25;13:2
**supposed (3)**
  6:17,18;9:23
**Sure (5)**
  2:15;4:3;12:3;
  19:15,24
**surround (1)**
  5:17

**T**

**talked (1)**
  6:20
**telling (1)**
  6:16
**tenure (1)**
  16:24
**term (1)**
  5:17
**termination (1)**
  18:4
**terms (3)**
  16:3;18:11;19:19
**thinking (2)**
  4:11;5:16
**thought (9)**
  5:3,14;8:11;10:24;
  14:20;17:2,4,21;
  18:10
**throughout (2)**
  6:1,5,14,24;9:15;
  17:8,19
**throw (1)**

4:17
**times (1)**
  17:1
**today (3)**
  2:4,22;19:20
**told (2)**
  16:11;17:1
**took (3)**
  6:9;10:20;14:10
**top (1)**
  12:21
**tow (2)**
  8:9,9
**Towing (3)**
  3:16,17;13:7
**transferred (2)**
  7:10;9:5
**transporting (1)**
  9:25
**tried (2)**
  19:23,23
**true (1)**
  21:2
**Trustee (15)**
  2:12;3:9;12:14,17,
  24;13:16,21;14:5,16;
  15:5,16;16:3,11,17;
  20:3
**try (5)**
  3:19;8:15;10:22,
  24;14:15
**trying (5)**
  3:8;4:5,5;7:11;
  9:11
**tune (1)**
  12:22
**turn (1)**
  7:22
**turned (3)**
  10:13;17:11;19:25
**twenty (1)**
  16:23
**twenty-one (1)**
  4:17

**U**

**ultimate (1)**
  19:11
**ultimately (2)**
  14:15;19:5
**unanointed (1)**
  4:10
**under (3)**
  2:6;13:23;17:12
**understatement (2)**
  17:24;18:1
**understood (2)**
  9:15;10:5
**underwater (2)**
  14:7;16:10
**unethical (2)**
  16:25;17:22

**unfathomable (1)**
  5:19
**Unfortunately (5)**
  6:12;7:2,22;17:10;
  19:25
**Union (3)**
  2:4;5:8;10:15
**unions (1)**
  10:10
**UNISON (1)**
  21:14
**United (6)**
  12:14,17,24;13:16,
  21;15:16
**unless (1)**
  14:18
**unscrupulous (1)**
  6:13
**up (12)**
  7:5;11:8,10,10,23;
  12:6;13:3;16:18;
  18:9;19:4,6;20:18
**up- (1)**
  7:11
**up-front (1)**
  7:12
**upon (1)**
  20:22
**Upright (1)**
  13:2
**urge (1)**
  21:8
**used (1)**
  7:5;17:7,19
**using (1)**
  5:10

**V**

**valid (1)**
  15:23
**vehicle (25)**
  3:5,6,10,15,18;4:4;
  6:6,10,11,22;7:4,6,8,
  10,18;10:12,13,15,
  16,19;11:8,11,11,20;
  12:19
**vehicles (1)**
  6:18
**view (1)**
  2:18;12:16;17:23
**Virginia (2)**
  8:9;13:2
**voluntary (3)**
  10:6,12,25

**W**

**waited (1)**
  6:4
**way (3)**
  11:12;12:17;17:22
**Whereupon (1)**

Case 16-00703-SCS   Doc 2   Filed 09/27/16   Entered 09/27/16 15:02:18   Desc Main
Case 16-70486-SCS   Doc 44 Document 09/12/16 Page 92 of 09/12/16 12:08:10   Desc Main
Document   Page 29 of 29

BRETT BUD HALL
Case No. 16-70486-scs

September 8, 2016

21:15
**Whitehurst (12)**
12:12,13,13;14:4;
15:2,10;16:2;20:14,
17,21;21:2,12
**who'd (1)**
4:10
**whole (3)**
3:10;4:6;18:14
**willing (1)**
4:3
**willingly (1)**
9:3
**willingness (1)**
20:11
**withdrawal (1)**
14:3
**within (1)**
9:24
**without (1)**
9:20
**woods (1)**
5:8
**word (1)**
12:15
**worked (4)**
6:4,21;10:3,10
**working (5)**
6:1,4,24;9:15;10:6
**worried (1)**
10:18
**worry (1)**
6:6
**worst (1)**
4:15
**worth (3)**
12:19,20;17:2
**wrong (1)**
8:8

**Y**

**year (5)**
5:25;6:14;7:22,23;
13:8
**years (4)**
4:17,18;11:14;
16:23
**young (1)**
9:4

**1**

**11:33 (1)**
21:15

**2**

**20,000 (1)**
12:20
**2015 (1)**
7:22

**3**

**3- (1)**
12:22

**4**

**4,000 (1)**
12:22
**40,000 (1)**
12:20

**5**

**523 (1)**
2:7

**6**

**62 (1)**
2:1
**63 (1)**
2:1

**7**

**7 (5)**
14:5,7,16,18,19
**727 (4)**
2:6;15:22;16:3,12