## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

_____

IN RE:                             )        Misc. Proceeding 16-00703-SCS
                                   )
EDRIE A. PFEIFFER, ESQUIRE         )
                                   )
                                   )
_____)

### MEMORANDUM IN SUPPORT OF EDRIE PFEIFFER'S MOTION TO CONTINUE
### THE FINAL HEARING IN THIS MATTER PENDING
### THE RESOLUTION OF TWO CASES PENDING IN THE WESTERN DISTRICT

The Court convened a Preliminary Hearing on December 1, 2016 in this matter which involves an Order to Show Cause issued on September 27, 2016 against Edrie A. Pfeiffer, Esquire ("Ms. Pfeiffer"), a member of the bar of this Court ("the Show Cause Order"). The Court sought counsel's view on the period of time needed to prepare for the final hearing.  In response, counsel asked whether the Court would consider delaying the resolution of this matter until two adversary proceedings pending in the U.S. Bankruptcy Court for the Western District of Virginia were resolved.  The Court requested that Ms. Pfeiffer file a motion in support of the request.

### A.  The Pending Cases in the Western District

There are two adversary cases pending in the U.S. Bankruptcy Court for the Western District of Virginia which were filed by United States Trustee; i.e., *Robbins v. Morgan, et. al.*, Case No. 16-5014 and *Robbins v. Delafield, et al.*, Case No. 16-7024 (collectively "the Western District Cases").  The complaints are attached as Exhibit Nos. 1 & 2.[1]  The complaints seek to have the court (1) order that the defendants disgorge all monies paid for attorney's fees, (2)

---

[1] The *Robbins v. Morgan* matter and the *Robbins v. Delafield* matter are related respectively to the Chapter 7 bankruptcy proceedings of (1) Jessica Scott and (2) Timothy and Andrian Williams.

enjoin defendants from advising debtors to participate in what the U.S. Trustee refers to as the

"Sperro scheme," (3) order civil penalties, and (4) bar the lawyer defendants from practicing

before the Court.

The complaint in each of the Western District Cases names the counsel for the debtor(s)

in the lead bankruptcy case as defendants; i.e., John C. Morgan, Jr. and his law firm in the

*Robbins v. Morgan* matter and Darren Delafield in the *Robbins v. Delafield* matter.[2]  Each

complaint also names several common defendants; i.e., Law Solutions Chicago, LLC, ("LSC"),

Upright Law LLC, Jason Allen, Kevin Chern and Edmund Scanlan.[3]  All of these defendants

refer to themselves as the "Upright Defendants" which we will use as well.  "Upright" apparently

refers to the assumed name, Upright Law, LLC, under which LSC is authorized to transact

business in Illinois. Exhibit 1, ¶ 9. Sperro LLC also is named as a common defendant.  Exhibit 1,

¶ 19 and Exhibit 2, ¶ 19.

### 1.  The Relationships of the Upright Defendants

Each complaint alleges a similar set of facts concerning the relationships of the Upright

Defendants which are admitted in all material respects by the Upright Defendants' answers.[4]

Those facts are as follows.

LSC is an Illinois limited liability company that solicits bankruptcy clients over the

internet.[5]    Chern and Allen are listed on documents filed with the Illinois Secretary of State as

---

[2] Exhibit 1, ¶ 18 and Exhibit 2, ¶ 17.

[3] Exhibit 1, ¶¶ 7-9, 15, 17 and Exhibit , ¶¶ 7-9, 15, 16.

[4] The answers filed jointly by the Upright Defendants re-state the complaints' allegations before
giving a response.  See Exhibits 3 & 4.

[5] Exhibit 1, ¶¶ 9-10 and Exhibit 2, ¶¶ 9-10.  Admitted by answers, Exhibits 3 & 4.

managers of LSC and also are members of LSC.[6]  Scanlan is listed on LSC's website as the chief

executive officer of "Upright Law".[7]

 Both Morgan and Delafield are members of the bar of the U.S. Bankruptcy Court for the

Western District of Virginia.[8]  Upright Law, LLC is a Virginia limited liability company.[9]  Both

Morgan and Delafield are limited partners in Upright Law, LLC. [10]

### 2.  Allegations Regarding Referral of Clients and the New Car Custody Program

Each complaint alleges that clients who sign up with Upright Law (or LSC) and require debt

relief services in the Western District are ultimately assigned to attorneys who are licensed in the

Western District.[11]  Here, the clients (debtors) were referred to Morgan and Delafield, who are

partners in Upright Law, LLC a Virginia company.[12]

The complaints allege that in or about May 2015, LSC began advising the lawyers with

whom it worked to participate in the New Car Custody Program by referring clients to Sperro

---

[6] Exhibit 1, ¶¶ 13-14 and Exhibit 2, ¶¶ 13-14.  Admitted by answers, Exhibits 3 & 4.

[7] Exhibit 1, ¶ 15 and Exhibit 2 ¶ 15. Admitted by answers, Exhibits 3 & 4.

[8] Exhibit 1, ¶ 18 and Exhibit 2, ¶ 17. Admitted by answers, Exhibits 3 & 4.

[9] Exhibit 1, ¶ 17 and Exhibit 2, ¶ 16.  Admitted by answers, Exhibits 3 & 4.

[10] Exhibit 1, ¶ 18 and Exhibit 2, ¶ 17.  Admitted by answers, Exhibits 3 & 4.

[11] Exhibit 1, ¶¶ 22, 40-43 and 63; Exhibit 2, ¶¶ 22, 40-43 and 64.

[12] LSC apparently uses the assumed name Upright Law LLC.  That is not to be confused with the Virginia entity of the same name.

The undersigned counsel cannot represent that he is currently conversant with the precise legal relationship between Mr. Morgan and Mr. Delafield and Upright Law, LLC (the Virginia company) and LSC, the Illinois limited liability company.  However, the status of each person with these entities is not a material fact in the analysis of whether the final hearing on the Show Cause Order issued against Ms. Pfeiffer should be continued.

LLC (again, "Sperro")[13]   The New Car Custody Program was described by Chern in an email

sent to "valued partners" on June 18, 2015. (See Chern email at Exhibit 5).[14]  (The New Car

Custody Program shall also be referred hereafter as "the Program" or "the Sperro Program").

Mr. Chern explained that the Program was designed to assist the debtor by relieving him or her

of the burden of a vehicle he or she could not afford.  See Exhibit 5.[15]  Mr. Chern further

represented that the Program had been reviewed and approved by a former U.S. Trustee, ethics

counsel and in-house counsel.  (Exhibit 5).  The complaints filed by the U.S. Trustee on the other

hand allege that the Program is an unlawful scheme to benefit the lawyers and Sperro at the

expense of the lienholders.[16]

### 3.  The Upright Defendants Contend that the New Car Custody Program As Conceived Did Not Violate Any Law

The answers filed by the Upright Defendants in the Western District Cases assert that the

Program was vetted carefully and as conceived did not violate any law, rule or regulation.[17]

See, e.g., Exhibit 3, ¶¶ 29 and 39 and Exhibit 4, ¶¶ 29 and 39:

---

[13] Exhibit 1, ¶ 29  and Exhibit 2, ¶ 29.

[14] Exhibit 1, ¶ 30 and Exhibit 2, ¶ 30.

[15] Chern's email reflects that the Program contemplated prompt notification to the lienholder that the vehicle was available for surrender or liquidation and reasonable towing and storage fees. Also the program contemplated that Sperro, not the lienholder would pay the fees and costs the debtor incurred for its bankruptcy.

Undersigned counsel is not yet prepared to proffer evidence concerning the interests of the lienholders but it has been suggested that banks and financing companies (the "lienholders") prefer to have a third party take custody of the vehicle and liquidate it at auction as the lienholders are not in the business of repossessing and liquidating vehicles.

[16] Exhibit 1, ¶¶ 29-39 and Exhibit 2, ¶¶ 29-39.

[17] As reflected herein, the Upright Defendants assert that the complaints against them are without merit (defenses that Ms. Pfeiffer should be entitled to use as they are developed).  Having said that, the merits of the accusations concerning the Sperro Program need not be resolved in order

> The Upright Defendants admit that in May 2015 it advised its partners and attorneys about the availability of a "New Car Custody Program" after reviewing the proposed program, conducting due diligence on Sperro and Fenner and analyzing the programs potential benefits for its clients.

**        **        **

> The Upright Defendants state that as part of the presentation to them of the benefit of its services, Sperro advised the Upright Defendants that he uses his connections as a former repossession, towing and storage service provider to automotive lenders and his regional storage facilities to facilitate the prompt turnover of the vehicles to the applicable secured lender.

It is expected that the Upright Defendants will present significant evidence in the Western District Cases that the Program was proper as conceived and vetted and approved by at least three attorneys. Such evidence will paint a much different picture of the Sperro Program than as alleged by the U.S. Trustee.

A summary of the defenses to be raised by the Upright Defendants in the Western District Cases can be found in the discovery responses filed by Upright Law in an adversary proceeding pending in Tennessee brought by Ally Financial, Inc. against the Upright Defendants.[18] ("the *Ally Financial* Matter). The Second Amended Complaint in the *Ally Financial* matter attacks the bona fides of the New Car Custody Program in much the same manner as the complaints in the Western District Cases. (Exhibit 6, ¶¶ 18-26). In response to an interrogatory asking whether the Program complied with all state and federal laws, Upright Law responded:

> Upright states that the program, as marketed, described and investigated was presented as a legitimate program pursuant to which Sperro assisted in the prompt disposition of the vehicle

---

to consider this motion. All that Ms. Pfeiffer is asking that the Court permit her the opportunity to use the evidence developed in the Western District Cases.

[18] *Ally Financial, Inc. v. Donahue, et al.*, Adv. No. 3:16 – 90048 (M.D. Tenn.)

> through (a) its prompt return of the vehicle to the lien holder; (b)
> its prompt auction of the vehicle for the lien holders benefit; or
> (c) if abandoned by the lien holder, disposing the vehicle through
> auction or other means.  It was further presented that Sperro was
> able to perform such services effectively because of his past and
> existing relationships with consumer auto financing companies
> and his national network of towers and storage facilities.
> Answering further, Upright refers Ally to its response to
> Interrogatory No 5.

See Exhibit 7 at p. 6, No. 8.

Upright Law also provided detailed information concerning its due diligence to determine

that the Program was proper:

> Upright Law states that its due diligence with regard to Sperro
> included (a) Kevin Chern speaking to Mr. Fenner[19] at length about the
> program and how it operated, at and after the April 2015 annual National
> Association of Consumer Bankruptcy attorneys conference, where Mr.
> Fenner was promoting the Sperro program and where Mr. Chern first
> met Mr. Fenner; (b) Mr. Chern reviewing the program with the
> Upright's General Counsel at the time, David Leibowitz; (c) Mr.
> Leibowitz speaking with Mr. Fenner at length to gather details about the
> service; d) Mr. Leibowitz researching the interplay between the Sperro
> program and the Bankruptcy Code; (e) Mr. Leibowitz investigating
> whether any claims had been filed against Fenner, Sperro, Collateral
> services of Indiana or any other Sperro-related entitles known to Upright
> Law at the time (he found none); (f) vetting the program with Upright
> Law's outside counsel, Felicia Burda, the former United States Trustee
> for Regions 20 and 21, who researched the propriety of the program and
> consulted with other attorneys familiar with the Bankruptcy Code and
> how the program might interact with the requirements of the Code; (g)
> vetting the program with Mary Robinson, the firm's outside professional
> counsel, and the former Administrator of the Illinois Attorney
> Registration and Disciplinary Commission, who researched the propriety
> of the program in relation to the Rules of Professional Conduct; and (h)
> Mr. Chern speaking with other attorneys who  Mr. Fenner presented as
> referrals who previously had clients who used the program which
> attorneys represented by Mr. Chern that they had never received a
> complaint from any party whatsoever about their clients' use of the

---

[19] Mr. Fenner is, upon information and belief, an owner of Sperro, LLC and at the very least
someone who controls or directs its actions.  Exhibit 6, ¶ 10.

> Sperro program, had no issues with Sperro, and were happy with the
> program.

Exhibit 7 at p. 4-5, No. 5.

As noted above, the due diligence included obtaining the advice and counsel of at least

three attorneys expert  in the areas of bankruptcy law and professional responsibility; i.e., Felicia

Burda, former U.S. Trustee for Regions 20 and 21 and former Deputy Executive Director of the

American Bankruptcy Institute[20]; Mary Robinson, former Administrator of the Illinois Attorney

Registration and Disciplinary Commission and member of the ABA Standing Committee on

Ethics and Professional Responsibility[21]; and David Leibowitz, former Chief Legal Officer of

Upright Law who served as a panel trustee for 25 years and a Director of the National

Association of Bankruptcy Trustees.[22]

### 4.   The Procedural Status of the Western District Case

The Western District Cases have been consolidated for trial. See, Order, Exhibit 8.  Trial

is scheduled to begin on September 25, 2017. See Scheduling Order, Exhibit 9 at No. 1.  The

Scheduling Order provides that discovery is to be completed 60 days before trial.  *Id*., at No. 7.

Initial expert reports by the U.S. Trustee are to be filed by March 17, 2017 and by the defendants

by April 26, 2017, and rebuttal reports are to be filed by June 16, 2017. (*Id*., at No. 11).

The parties' proposed discovery plan displays that the New Car Custody Program will be

a prominent focus of discovery.  See Exhibit 10 at No. 2.[23]  Discovery has already begun.

---

[20] See Ms. Burda's biography at Exhibit 16.

[21] See Ms. Robinson's biography at Exhibit 17.

[22] See Mr. Leibowitz' biography at Exhibit 18.

[23] As the Plan reflects the parties expect to issue discovery on, among other topics, the
relationships between the various defendants, the New Car Custody Program, the promotion of

(Exhibits 11-13).[24]   The U.S. Trustee's document requests show a keen interest in discovering

all aspects of the Sperro Program.  Exhibit 14, pp. 8-10, Nos. 21-28.[25]

      Unquestionably, the depositions of the management of Upright Law, LLC and LSC will

be taken in the Western District Cases.  Also, it is likely that the testimony of Ms. Burda, Ms.

Robinson and Mr. Leibowitz (and perhaps other experts) will be obtained during the discovery

phase and/or at trial of the Western District Cases. All of this evidence is relevant to Ms.

Pfeiffer's defense and hopefully will be available to this Court at the hearing on the Show Cause

Order.

### B.  Pending Order to Show Cause andReasons to Continue a Hearing on the Merits

      The Court's Show Cause Order (Exhibit 15) requires Ms. Pfeiffer to show cause why she

should not be deemed to have violated various Virginia Rules of Professional Conduct; why she

should not be held in contempt; and why appropriate sanctions should not be assessed against

her. (Doc. No. 2). The pending Show Cause Order focuses directly on the New Car Custody

Program (that is, the Sperro Program) and Ms. Pfeiffer's referral of her client, Mr. Hall, to the

program.  See, the Show Cause Order, Exhibit 15, pp. 1-5.[26]  The Court has cited possible

violations of Rules of Professional Conduct 1.1 (competence), 1.2(c) (not assist a client in

---

the Program, the disposition of property under the Program and the sharing of compensation
received from the debtors or any entity providing compensation on behalf of the debtors.

[24] These exhibits are certificates of service reflecting that discovery requests have been served.

[25] The requests seek documents reflecting (1)  communications regarding the Sperro Program,
(2) materials exchanged between LSC and Mr. Morgan and Mr. Delafield regarding the Program,
(3) information obtained about Mr. Fenner and Mr. Sperro and (4) all information relating to the
Sperro Program.

[26] Although Ms. Pfeiffer is affiliated with LSC and Upright Law, LLC and is assigned clients via
LSC, Mr. Hall retained Ms. Pfeiffer directly.

fraudulent or criminal activity), 8.4(b) (not commit a criminal or deliberately wrongful act), and 8.4(c) (not engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Id., pp. 5-8.   The Court's Show Cause Order also refers to potential violation of a criminal statute, Va. Code §18.2-115. *Id.*, note 7.  There is no doubt that these are serious charges which Ms. Pfeiffer needs to address with as many facts that she can muster.

Ms. Pfeiffer is a small firm practitioner (herself and one full-time and one part-time associate.)   All of the evidence being developed in the Western District Cases will be relevant to Ms. Pfeiffer's defense to the Show Cause Order.  For her to independently develop that evidence (even if she could) would be prohibitively expensive and wasteful of time and resources that will be spent by the Upright Defendants in the Western District Cases.

If the Western District Cases did not exist, the undersigned likely would ask for a trial in mid to late-summer 2017.[27]  A further delay until the Western District Cases are tried and resolved would not cause prejudice.  Ms. Pfeiffer only used the Program once and will never use it again.  (We believe that Mr. Sperro is, in fact, incarcerated.).  Moreover, the lienholder in Mr. Hall's case agreed to a settlement to which Ms. Pfeiffer contributed.

Therefore, for the reasons set forth above, Edrie A. Pfeiffer, Esquire respectfully requests that this Court continue the final hearing in this matter pending the resolution of the two Western District Cases.

Date: December 14, 2016                              Respectfully submitted,

                                                     EDRIE A. PFEIFFER, ESQUIRE
                                                     *By Counsel*

---

[27] Ms. Pfeiffer obviously has easy access to her file regarding her representation of Mr. Hall. However, developing the evidence regarding the creation of the Sperro Program and LSC's vetting of that program is a far more complex project.

/s/ Bernard J. DiMuro
DiMuroGinsberg, P.C.
Bernard J. DiMuro (VSB No. 18784)
1101 King Street, Suite 610
Alexandria, Virginia 22314
Tel:  (703) 684-4333
Fax:  (703) 548-3181
bdimuro@dimuro.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record that are registered with CM/ECF.

/s/ Bernard J. DiMuro
Bernard J. DiMuro (VSB No. 18784)